UNITED STATES DISTRICT COURT



FOR THE

EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION



FILED

FEB 0 6 2026

CLERK, U.S. DISTRICT COURT
TEXAS EASTERN

| | | |
|---|---|---|
| PAUL WILLIAM LONSFORD<br>*Plaintiff*<br><br>-v-<br><br>HON. ANDREA STROH THOMPSON,<br>STEVEN JANWAY, MONA HOSSEINY-<br>TOVAR, KYLE BASINGER, GORANSON<br>BAIN AUSLEY, PLLC, LACEY ALEXIS<br>CLEMENT, COLLIN COUNTY, TEXAS, DOE<br>DEFENDANTS 1-10<br><br>*Defendant(S)* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 4:26cv 139 JCB<br><br>JURY TRIAL DEMANDED |

# Plaintiff's Verified Complaint Under 42 U.S.C. § 1983 For Declaratory, Injunctive, And Monetary Relief

*Lonsford v. Thompson, et al. — Verified Complaint Under 42 U.S.C. § 1983*

1

# TABLE OF CONTENTS

I. INTRODUCTION AND PRELIMINARY STATEMENT ...........................................6

II. JURISDICTION AND VENUE.........................................................................9

III. STATUTORY AUTHORITY ........................................................................10

IV. EXHAUSTION OF STATE REMEDIES ..........................................................12

V. ABSTENTION AND JURISDICTIONAL EXCEPTIONS ......................................13

    A. Younger v. Harris Does Not Apply ....................................................13

    B. Rooker-Feldman Does Not Apply.......................................................15

    C. Anti-Injunction Act Does Not Bar Relief ...........................................17

    D. Domestic-Relations Exception Does Not Apply ..................................17

    E. Judicial Immunity Clarification.........................................................18

    F. Qualified Immunity Anticipation .......................................................18

    G. Declaratory-First Sequencing ..........................................................22

VI. THE PARTIES .........................................................................................23

VII. FACTUAL ALLEGATIONS........................................................................28

VIII. STATE ACTION AND COLOR OF LAW......................................................56

IX. MUNICIPAL LIABILITY UNDER MONELL ...................................................59

X. CLAIMS FOR RELIEF ...............................................................................62

    COUNT I: Denial of Procedural Due Process .......................................62

    COUNT II: Denial of Access to Courts ................................................66

    COUNT III: Equal Protection Violation................................................70

    COUNT IV: Conspiracy to Deprive Civil Rights....................................73

    COUNT V: Municipal Liability (Monell) ..............................................77

XI. INJURIES AND DAMAGES.........................................................................79

XII. PRAYER FOR RELIEF .............................................................................85

XIII. JURY DEMAND .....................................................................................87

XIV. VERIFICATION ......................................................................................88

XV. CERTIFICATE OF SERVICE ......................................................................90

# TABLE OF AUTHORITIES

### Cases

*A.M. v. N.M. Dep't of Health,* 148 F.Supp.3d 1232 (D.N.M. 2015) ................................66

*Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970) ................................73

*Ankenbrandt v. Richards,* 504 U.S. 689 (1992) ................................17

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ................................8

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ................................8

*Boddie v. Connecticut,* 401 U.S. 371 (1971) ................................65

*Bounds v. Smith,* 430 U.S. 817 (1977) ................................19, 20, 66

*Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n,* 531 U.S. 288 (2001) ................58

*Caldwell v. Univ. of N.M. Bd. of Regents,* 2023 WL __ (D.N.M. 2023) ................................62

*Campos v. Cintas Corp.,* No. 13-04-539-CV, 2005 WL 1812600 (Tex. App.—Corpus Christi Aug. 4, 2005, no pet.) ................................81

*Cheeks v. Belmar,* 2020 WL 1503688 (E.D. Mo. 2020) ................................19

*Christopher v. Harbury,* 536 U.S. 403 (2002) ................................66

*City of Canton v. Harris,* 489 U.S. 378 (1989) ................................60, 77, 82

*Danner v. Bd. of Prof'l Responsibility,* 277 F. App'x 575 (6th Cir. 2008) ................................14

*Dennis v. Sparks,* 449 U.S. 24 (1980) ................................8, 20, 57

*Ex parte Young,* 209 U.S. 123 (1908) ................................22

*Forrester v. White,* 484 U.S. 219 (1988) ................................18, 43

*Grounds v. Tolar Indep. Sch. Dist.,* 856 S.W.2d 417 (Tex. 1993) ................................62

*Hafer v. Melo,* 502 U.S. 21 (1991) ................................7

*Harlow v. Fitzgerald,* 457 U.S. 800 (1982) ................................18

*Hart v. O'Brien,* 127 F.3d 424 (5th Cir. 1997) ................................84

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238 (1944) ................................46

*Hope For Families & Cmty. Serv. Inc. v. Warren,* 721 F.Supp.2d 1079 (M.D. Ala. 2010) ..........70

*Howard v. Grinage,* 82 F.3d 1343 (6th Cir. 1996) ................................64

In re Blair, 408 S.W.3d 843 (Tex. App.—Houston [14th Dist.] 2013) ................................47

In re Waste Management of Texas, Inc., 392 S.W.3d 861 (Tex. App.—Texarkana 2013) ..........47

*Jackson v. Procunier,* 789 F.2d 307 (5th Cir. 1986) ................................68, 71

*Jones v. Lumpkin,* 2024 WL __ (S.D. Tex. 2024) ................................10, 66

*King Ranch v. Chapman,* 118 S.W.3d 742 (Tex. 2003) ................................49

*Lefebure v. Boeker,* 390 F.Supp.3d 729 (M.D. La. 2019) ................................72

*Lewis v. Casey,* 518 U.S. 343 (1996) ................................68

*Logan v. Zimmerman Brush Co.,* 455 U.S. 422 (1982) ................................63

*Lugar v. Edmondson Oil Co.,* 457 U.S. 922 (1982) ................................8, 57

*Martin v. Martin, Martin & Richards, Inc.*, 989 S.W.2d 357 (Tex. 1998) ........................................81

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ...................................................19, 54, 62, 63

*Matthews v. City of W. Point*, 863 F.Supp.2d 572 (N.D. Miss. 2012) ....................................59, 77

*Mireles v. Waco*, 502 U.S. 9 (1991) ........................................................18, 43

*Mitchum v. Foster*, 407 U.S. 225 (1972)........................................................17

*Monell v. Dep't of Social Services*, 436 U.S. 658 (1978) ...........................26, 59, 77, 79, 82

*Monroe v. Pape*, 365 U.S. 167 (1961) ........................................................12

*Mudge v. Macomb County*, 580 N.W.2d 845 (Mich. 1998) ........................................64

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ........................................19

*N GROUP LLC v. Hawaii County Liquor Com'n*, 681 F.Supp.2d 1209 (D. Haw. 2009) ...........70

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) ........................................60

*Peralta v. Heights Med. Ctr.*, 485 U.S. 80 (1988) ........................................46, 64

*Purdy v. Thomas*, 2023 WL __ (N.D. Tex. 2023)........................................67, 68

*Ryland v. Shapiro*, 708 F.2d 967 (5th Cir. 1983) ........................................68

*Skinner v. Switzer*, 562 U.S. 521 (2011) ........................................15, 16

*Squire v. Coughlan*, 469 F.3d 551 (6th Cir. 2006) ........................................14

*T.L. v. Cook Children's Med. Ctr.*, 607 S.W.3d 9 (Tex. App. 2020)........................................57

*Tenorio v. San Miguel Cnty. Det. Ctr.*, 2017 WL __ (D.N.M. 2017) ........................................73

*Tucker v. City of Richmond*, 388 F.Supp.3d 561 (E.D. Va. 2019)........................................68

*Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021) ........................................85

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) ........................................19, 70

*Waller v. Hanlon*, 922 F.3d 590 (5th Cir. 2019) ........................................66

*West v. Atkins*, 487 U.S. 42 (1988) ........................................58

*Zinermon v. Burch*, 494 U.S. 113 (1990) ........................................65

**Statutes and Rules**

28 U.S.C. § 1331........................................9
28 U.S.C. § 1343(a)(3)........................................9
28 U.S.C. § 1367........................................10
28 U.S.C. § 1391(b)(2)........................................9
28 U.S.C. § 2201........................................9
28 U.S.C. § 2202........................................9
28 U.S.C. § 2283........................................17
42 U.S.C. § 1983........................................*passim*
42 U.S.C. § 1985(3)........................................73
42 U.S.C. § 1988........................................86
Fed. R. Civ. P. 4........................................90
Fed. R. Civ. P. 8........................................6

*Fed. R. Civ. P. 11* ........................................................................................................88

*Fed. R. Civ. P. 38* ........................................................................................................87

*Fed. R. Civ. P. 57* ..........................................................................................................9

*Fed. R. Civ. P. 65* ......................................................................................................9, 84

Tex. Fam. Code § 155.001 ..........................................................................................28

Tex. Fam. Code § 157.268 ..........................................................................................62

Tex. Fam. Code § 158.506 ..........................................................................................62

Tex. Gov't Code § 74.053(b) ......................................................................................44

Tex. Gov't Code § 74.093 ......................................................................................43, 60

Tex. R. App. P. 26.1 ....................................................................................................44

*Tex. R. Civ. P. 8* ................................................................................................ *passim*

*Tex. R. Civ. P. 10* .............................................................................................. *passim*

*Tex. R. Civ. P. 12* .............................................................................................. *passim*

*Tex. R. Civ. P. 21(b)* ..................................................................................................81

*Tex. R. Civ. P. 106(b)* ..........................................................................................26, 40

*Tex. R. Civ. P. 166a(c)* ..............................................................................................81

*Tex. R. Civ. P. 245* ....................................................................................................65

Tex. R. Evid. 602 ....................................................................................................26, 40

## Constitutional Provisions

U.S. Const. amend. I ........................................................................................... *passim*

U.S. Const. amend. VII ................................................................................................87

U.S. Const. amend. XIV ..................................................................................... *passim*

Tex. Const. art. I, § 13 ................................................................................................10

Tex. Const. art. I, § 19 ................................................................................................10

## I. INTRODUCTION AND PRELIMINARY STATEMENT

1. COMES NOW, Paul William Lonsford ('Plaintiff'), appearing *pro se,* and brings this civil-rights action under **42 U.S.C. § 1983** to redress intentional and systemic violations of his rights secured by the **First and Fourteenth Amendments to the United States Constitution.** This Complaint is filed pursuant to **Federal Rule of Civil Procedure 8(a),** which requires: (1) a short and plain statement of the grounds for the court's jurisdiction; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought.

2. **This is a civil rights case.** It is not a family law case.

3. Although the underlying events arose in the context of a post-divorce enforcement proceeding, this action does not seek to review, modify, reverse, or vacate any state-court judgment. **Plaintiff does not ask this Court to modify child support, custody, visitation, possession, or any other domestic-relations determination.** The **relief sought is limited to redressing procedural and constitutional violations** in the administration of the state-court process.

4. The essence of Plaintiff's claims spans 10 months, including efforts to secure hearings in the trial court, the Fifth District Court of Appeals, and the Texas Supreme Court. Defendants coordinated to prevent Plaintiff from obtaining any hearing on his eighteen pending motions, thereby denying his constitutional right of access to the courts. The Defendants went so far as to fabricate and conduct a fraudulent hearing presided over by a judge lacking lawful authority (no valid assignment), based on documents never properly filed or entered, on a date when the case was not on the docket. At the same time, the regularly assigned judge was present in the courthouse presiding over other matters.

5. Plaintiff seeks declaratory, injunctive, and monetary relief against all Defendants that include state officials, court employees, and private actors who acted jointly under *"color of state law,"* for **their coordinated conduct that deprived him of due process, equal protection, and meaningful access to the courts.**

6. Plaintiff sues each Defendant in both their individual and official capacities, to the extent applicable, to preserve full bases of liability under *Hafer v. Melo,* 502 U.S. 21 (1991). Official-capacity suits against individual defendants represent another way of pleading an action against the governmental entity of which the officer is an agent.

7. This action arises from the initial intervention by Kyle Basinger, attorney of record and Partner at **Goranson Bain Ausley, PLLC,** who improperly interfered and coordinated with Court Coordinator Steven Janway to set hearings without notice or legal authority, while falsely denying representation despite Plaintiff's emails confirming otherwise. Coordinator Janway then refused to respond to over 67 emails from Plaintiff seeking hearings, explanations, or corrections to these defects, thereby denying the Plaintiff the opportunity to be heard on his original motion and resulting in the fabrication of unauthorized proceedings.

8. **This case arises from the intentional and systemic misuse of state judicial and administrative authority to simulate lawful process while excluding Plaintiff from participation in the judicial system. Through coordinated acts of docket manipulation, selective communication, backdating, and procedural suppression, Defendants collectively denied Plaintiff notice, opportunity to be heard, and equal treatment under law.**

9. The challenged conduct is executed jointly by judicial officers, court staff, and private attorneys and constitutes state action under *Lugar v. Edmondson Oil Co.,* 457 U.S. 922 (1982), and *Dennis v. Sparks,* 449 U.S. 24 (1980).

10. This systemic deprivation is further evidenced by administrative alterations to the court's electronic docket **(entries labeled '–AST')** made outside any signed order or hearing record, confirming the non-judicial, administrative nature of the misconduct.

11. All factual allegations are based on verified court filings, authenticated docket entries, and record communications in the underlying case. Each event described occurred in the public judicial record and is capable of independent verification.

12. These particularized, date-stamped allegations satisfy the plausibility standard outlined in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). Plaintiff has alleged facts and not mere legal conclusions that, accepted as accurate, state claims for relief that are plausible on their face.

## II. JURISDICTION AND VENUE

13. This Court has original subject matter jurisdiction pursuant to **28 U.S.C. § 1331** (federal question) because this action arises under the Constitution and laws of the United States, specifically the **First and Fourteenth Amendments** and **42 U.S.C. § 1983.**

14. This Court has jurisdiction pursuant to **28 U.S.C. § 1343(a)(3),** which provides jurisdiction for civil actions to redress the deprivation, under *"color of state law,"* of any right, privilege, or immunity secured by the Constitution.

15. Declaratory relief is authorized by **28 U.S.C. § 2201** and **Federal Rule of Civil Procedure**

16. Injunctive relief is authorized by **28 U.S.C. § 2202** and **Federal Rule of Civil Procedure**

17. Venue is proper in the Eastern District of Texas, Sherman Division, pursuant to **28 U.S.C. § 1391(b)(2)** because a substantial part of the events or omissions giving rise to the claims occurred in Collin County, Texas, which is within this judicial district.

18. Plaintiff invokes supplemental jurisdiction under **28 U.S.C. § 1367** over related state-law claims, including abuse of process and fraud on the court, which arise from the same case or controversy as the federal claims and share a common nucleus of operative facts.

19. Plaintiff also invokes rights secured by **Article I, Sections 13 and 19 of the Texas Constitution,** which guarantee open courts and due course of law.

## III. STATUTORY AUTHORITY

21. This action is brought pursuant to **42 U.S.C. § 1983,** which provides in relevant part:

> *"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."*

22. The statute requires: (1) action **"under color of"** state law; (2) that **"subjects, or causes to be subjected"** a person; (3) to "**the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."** Section 1983 **"does not create any substantive rights but instead was designed to provide a remedy for violations of statutory and constitutional rights."** *Jones v. Lumpkin*, 2024 WL ___ (S.D. Tex. 2024). To state a valid claim under **§ 1983,** a plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States; and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Id.* Both elements are satisfied here.

23. As applied here: (1) Defendants acted under **"color of Texas state law"** through their positions as state judicial officers, court employees, and private attorneys utilizing state court processes; (2) Defendants' coordinated conduct caused Plaintiff to be subject to the deprivation of rights;

(3) the rights deprived include procedural due process, access to courts, and equal protection that are all secured by the **First and Fourteenth Amendments.**

24. The **1996 amendment to § 1983**, which added the judicial immunity exception for injunctive relief, is expressly addressed in this Complaint. Plaintiff seeks declaratory relief first, and injunctive relief only to the extent declaratory relief proves unavailable or is violated.

## IV. EXHAUSTION OF STATE REMEDIES

26. Although exhaustion of state remedies is not required under **42 U.S.C. § 1983,** see *Monroe v. Pape,* 365 U.S. 167 (1961), **Plaintiff has nevertheless exhausted all available state court remedies, demonstrating that state remedies were structurally unavailable.**

27. Plaintiff pursued the following state remedies:

   a) Over seventy (70) verified motions filed in the 416th District Court of Collin County, Texas, between April and November 2025, none of which received rulings, hearings, or meaningful acknowledgment;

   b) Petition for Writ of Mandamus in the Fifth Court of Appeals, Case No. 05-25-00739-CV, filed June 17, 2025;

   c) Petition for Writ of Mandamus in the Texas Supreme Court, Case No. 25-0621, filed July 18, 2025;

   d) Motion for Rehearing in the Texas Supreme Court, filed September 2025; and

   e) Motion for Judicial Clarification following the August 29, 2025 order.

   f) The Fifth Court of Appeals denied mandamus on July 17, 2025, without opinion after approximately thirty days of inaction.

   g) The Texas Supreme Court denied mandamus on August 22, 2025, without opinion after approximately thirty-six days. The Motion for Rehearing was denied on October 10, 2025, after 30 days, without opinion.

28. **At no point did any Texas court hold a hearing, make findings, or meaningfully engage with the constitutional issues raised. This repeated sequence of prolonged inaction followed by unexplained denials reflects procedural pretense without meaningful judicial engagement.**

29. The structural unavailability of state remedies is demonstrated by the pattern: (a) the trial court refused to schedule any hearings despite 70+ filings; (b) the intermediate appellate court denied mandamus without opinion; (c) the Texas Supreme Court denied mandamus and rehearing without opinion. **No Texas court engaged with the substance of Plaintiff's claims.**

## V. ABSTENTION AND JURISDICTIONAL EXCEPTIONS

### A. Younger v. Harris Does Not Apply

30. *Younger* abstention does not apply because there are no ongoing state judicial proceedings requiring federal court abstention. The state proceedings have concluded without resolution of Plaintiff's constitutional claims.

31. Even if state proceedings were ongoing, the bad-faith exception to *Younger* applies. **Bad faith exists when the state proceeding was brought to retaliate for or deter the exercise of constitutionally protected rights,** or when the prosecution is brought without a reasonable expectation of obtaining a valid conviction. **Here, the coordinated denial of process was designed to prevent Plaintiff from exercising his constitutional rights.** The bad-faith exception is independently satisfied because Defendants' conduct was designed to prevent Plaintiff from exercising his constitutional rights rather than to achieve any legitimate state interest. **Janway refused to schedule hearings based on Basinger's demonstrably false statements.** Basinger stated on April 16, 2025: **"Just to be clear, I have not been retained to represent Ms. Clement and have not spoken to her."** On April 17, 2025, Basinger stated: **"My representation ended when the last order was signed... You have to serve her."** And later that day: **"I am no longer the attorney of record once the case is closed."** Each

statement was false under **TRCP 10.** On August 5, 2025, Ba**singer's own firm admitted in a verified filing** that **"Mr. Basinger has continuously served as attorney of record for Respondent since his initial appearance in this cause."** The August 29, 2025, **order denied eighteen motions without any hearing, notice, or opportunity to respond,** conduct inconsistent with any legitimate adjudicative purpose. The November 7, 2025, **proceeding was conducted before retired Judge Charles H. Stokes without any assignment order, while the assigned judge, Defendant Thompson, sat in the same courthouse presiding over three other cases:** Cause Nos. 416-08950-2025, 416-08954-2025, and 416-56977-2025. **These facts establish bad faith because they show Defendants acted to obstruct rather than facilitate Plaintiff's access to the courts.**

32. **The extraordinary circumstances exception also applies where the state system offers no realistic opportunity to vindicate federal rights.** *Younger* abstention requires three conditions: (1) an ongoing state judicial proceeding; (2) that implicates important state interests; and (3) an adequate opportunity to raise constitutional challenges in the state proceeding. *Danner v. Bd. of Prof'l Responsibility*, 277 F. App'x 575, 578 (6th Cir. 2008). Here, the first element is not satisfied—there are no ongoing proceedings. Even if proceedings were ongoing, the third element fails because Plaintiff was denied any opportunity to raise constitutional challenges, as demonstrated by the refusal to hear any of his 70+ motions. *"Abstention is appropriate unless state law clearly bars the interposition of the constitutional claims."* *Squire v. Coughlan*, 469 F.3d 551, 556 (6th Cir. 2006). **Plaintiff's constitutional claims were structurally barred by Defendants' conduct.**

## B. *Rooker-Feldman Does Not Apply*

33. The **Rooker-Feldman doctrine** does not apply because Plaintiff does not challenge any state-court judgment. Plaintiff challenges the independent constitutional injuries arising from the administration of process and injuries that exist separate and apart from any substantive state-court ruling.

34. Plaintiff does not ask this Court to review, reverse, or modify any state-court decision regarding child support, custody, or any other domestic-relations matter. The constitutional violations, including denial of notice, opportunity to be heard, access to the courts, and equal protection, are independent injuries actionable under **§ 1983.** The relevant inquiry under **Rooker-Feldman** is "*whether the source of the injury upon which the plaintiff bases his federal claim is the state-court judgment*" itself. *Skinner v. Switzer*, 562 U.S. 521, 532 (2011).

35. Here, the source of Plaintiff's injury is not any state-court judgment but the independent denial of constitutional process and injuries that exist regardless of any underlying ruling. The **Rooker-Feldman doctrine** *"occupies narrow ground"* and is "confined to cases brought by state courts inviting district court review and rejection of those judgments." *Id.*

36. Plaintiff does not seek review of any judgment; he seeks redress for the unconstitutional administration of process.

37. The independent nature of Plaintiff's injuries is demonstrated by the fact that they would exist even if every substantive state-court ruling were correct on the merits. **Plaintiff does not claim he should have won any particular motion; he claims he was entitled to have his motions heard before they were denied.**

38. The injury of being denied a hearing is complete the moment the hearing is denied; it does not depend on what the outcome of that hearing would have been. A litigant who receives notice, a hearing, and an adverse ruling has received due process even if the ruling was wrong. A litigant who receives no notice and no hearing has been denied due process, even if the ruling was correct.

39. The August 29, 2025, order denying eighteen motions was never properly filed; it bears no file stamp, no **TRCP 306a** notice, and was transmitted by Janway marked **"Service Only,"** acknowledging it was not a properly filed court order.

40. Similarly, the injury of having a proceeding conducted before an unauthorized judge on November 7, 2025, is independent of whatever that judge ruled. These are injuries to the administration of justice itself, not disguised challenges to state-court outcomes.

41. Plaintiff does not ask this Court to review, reverse, or modify any state-court decision regarding child support, custody, or any other domestic-relations matter. The constitutional violations, including denial of notice, opportunity to be heard, access to the courts, and equal protection, are independent injuries actionable under **§ 1983.**

42. The relevant inquiry under Rooker-Feldman is *"whether the source of the injury upon which the plaintiff bases his federal claim is the state-court judgment"* itself. *Skinner v. Switzer*, 562 U.S. 521, 532 (2011). Here, the source of Plaintiff's injury is not any state-court judgment but the independent denial of constitutional process injuries that exist regardless of any underlying ruling.

43. The Rooker-Feldman doctrine **"occupies narrow ground"** and is *"confined to cases brought by state-court losers inviting district court review and rejection of those*

*judgments." Id.* Plaintiff does not seek review of any judgment; he seeks redress for the unconstitutional administration of process.

44. Plaintiff has filed extensive documentary evidence with the Texas Supreme Court in Case No. 25-0621, which is incorporated herein by reference and available upon request. Attached hereto as Exhibits A, B, and C are the official docket histories from the 416th District Court, Fifth Court of Appeals, and Texas Supreme Court, which verify each filing referenced in this petition.

### C. Anti-Injunction Act Does Not Bar Relief

45. The **Anti-Injunction Act, 28 U.S.C. § 2283,** does not bar relief because this action falls within the *"expressly authorized by Act of Congress"* exception. **Section 1983** is an express congressional authorization to enjoin state court proceedings when necessary to protect civil rights. See *Mitchum v. Foster,* 407 U.S. 225 (1972).

### D. Domestic-Relations Exception Does Not Apply

46. The domestic relations exception to federal jurisdiction does not apply. **This action challenges the constitutional administration of process, not the underlying domestic-relations determinations.** See *Ankenbrandt v. Richards,* 504 U.S. 689 (1992).

47. Plaintiff does not seek any determination regarding divorce, alimony, child custody, or child support amounts. **The relief sought relates solely to constitutional violations in the administration of judicial process.**

## E. Judicial Immunity Clarification

48. **Defendant Thompson is sued for non-judicial, administrative acts that are not protected by absolute judicial immunity.** Judicial immunity shields judges only for acts performed in their judicial capacity. See *Mireles v. Waco,* 502 U.S. 9 (1991).

49. Acts that are administrative in nature, such as adopting submission-only procedures without legal basis, directing staff to transmit unfiled documents, accepting filings from unauthorized counsel, and permitting docket alterations outside any signed order, are not judicial acts entitled to immunity. See *Forrester v. White,* 484 U.S. 219 (1988) (Judge's administrative acts not protected).

50. Consistent with the **1996 amendment to § 1983,** Plaintiff seeks declaratory relief against Defendant Thompson, and injunctive relief only if declaratory relief proves unavailable or is violated.

## F. Qualified Immunity Anticipation

51. Plaintiff anticipates that individual Defendants may assert qualified immunity. Under *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982), government officials performing discretionary functions are shielded from liability unless their conduct violates ***"clearly established statutory or constitutional rights of which a reasonable person would have known."***

52. Qualified immunity requires a two-part analysis: (1) whether the **plaintiff has alleged a violation of a statutory or constitutional right;** and (2) whether that right was "*clearly established"* at the time of the challenged conduct.

53. As to the first prong, this Complaint alleges **violations of Plaintiff's right to procedural due process, access to courts, and equal protection rights** secured by the **First and Fourteenth Amendments.**

54. As to the second prong, these **rights were clearly always established relevant to this Complaint.** It has been clearly established since at least *Mathews v. Eldridge* (1976) that procedural due process requires notice and opportunity to be heard before deprivation of a protected interest. It has been clearly established since at least *Bounds v. Smith* (1977) that prisoners and litigants have a constitutional right of access to courts. It has been clearly established since at least *Village of Willowbrook v. Olech* (2000) that class-of-one equal protection claims are cognizable. **A reasonable official would have known that the conduct alleged herein violated Plaintiff's constitutional rights.** The doctrine of qualified immunity *"requires an individualized analysis as to each officer, because a person may be held personally liable for a constitutional violation only if his own conduct violated a clearly established constitutional right." Cheeks v. Belmar*, 2020 WL 1503688, at *5 (E.D. Mo. 2020). This Complaint provides such individualized allegations: each Defendant's specific conduct is detailed in **Sections VI and VII,** and each Defendant's personal participation in the constitutional violations is alleged with particularity. As applied to each Defendant, the law was clearly established as follows:

55. **Defendant Thompson**: It has been clearly established since at least *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), that **due process requires notice and opportunity to be heard before deprivation of a protected interest. A reasonable judge would have known that failing to rule on any of a litigant's seventy-plus motions for nine months, while permitting unauthorized opposing counsel to participate and obtain**

relief, violates due process. **Thompson's conduct was administrative,** not judicial, in nature; her **delegation of scheduling decisions to Coordinator Janway, her routing of Plaintiff's case to an unassigned visiting judge on November 7, 2025, while she presided over three other cases, and her failure to address documented complaints constitute non-judicial administrative acts not protected by judicial immunity.**

56. **Defendant Janway**: It has been clearly established since at least *Bounds v. Smith*, 430 U.S. 817 (1977), that **litigants have a constitutional right of access to courts. Janway ignored more than sixty-seven documented communications from Plaintiff while consistently responding to opposing counsel.** A reasonable court coordinator would have known that refusing to schedule one party's hearings based on opposing counsel's unverified statements, while simultaneously offering that opposing counsel preferential scheduling access, violates the right of access to the courts and equal protection. **Janway's conduct was knowing and intentional, not negligent.**

57. **Defendant Basinger**: It has been clearly established since at least *Dennis v. Sparks*, 449 U.S. 24 (1980), that private parties who jointly engage with state officials in constitutional deprivations act under *color of law.* Basinger made four separate false statements to Janway in April 2025, denying his attorney-of-record status, which his own firm contradicted in an August 5, 2025, verified filing. **A reasonable attorney would have known that making false statements to court personnel that directly cause the denial of an opposing party's access to the judicial process subjects him to Section 1983 liability.**

58. **Defendant Hosseiny-Tovar**: It has been clearly established since at least *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), that misuse of state judicial processes constitutes state action. Hosseiny-Tovar **filed an unauthorized Entry of Appearance** without **a TRCP**

**8** designation, continued filing in violation of **TRCP 12's** mandatory stay, and, on August 25, 2025, transmitted a fabricated "Discovery Control Plan" styled as a court order that was never filed with the Court. Her own August 5, 2025, **verified filing admitted** "no **TRCP 10** withdrawal or **TRCP 8** designation existed." A reasonable attorney would have known this conduct violates constitutional rights.

59. **Defendant Gracey**: Gracey filed four proposed orders between 4:02 PM and 4:09 PM on August 5, 2025, without any accompanying motion or hearing, and coordinated communications with court staff. A reasonable paralegal would have known that facilitating *ex parte* filings designed to obtain relief without notice to the opposing party constitutes a deprivation of due process.

60. **Defendant Clement**: It has been clearly established that **knowingly making false statements in judicial proceedings to obtain procedural advantages violates due process.** Clement executed a false declaration claiming personal knowledge of events she could not have witnessed to obtain substituted service.

61. **Defendant Goranson Bain Ausley, PLLC**: The firm is **vicariously liable for the acts of its employees:** Kyle Basinger, a Partner at Goranson Bain Ausley, PLLC; Hosseiny-Tovar; and Gracey, is directly liable for its pattern of coordinated procedural manipulation.

## G. Declaratory-First Sequencing

62. Consistent with the **1996 amendment to 42 U.S.C. § 1983** and *Ex Parte Young*, 209 U.S. 123 (1908), Plaintiff seeks declaratory relief first. Plaintiff requests injunctive relief against the judicial officer only if declaratory relief proves unavailable or a declaratory decree is violated.

## VI. THE PARTIES

### A. Plaintiff

64. **Paul William Lonsford** is a natural person and citizen of the United States, domiciled in Collin County, Texas. He appeared *pro se* in the underlying state court proceedings in the 416th District Court of Collin County. His address is 820 Hawk Wood Lane, Prosper, Texas 75078. His email is paul@lonsford.com. His telephone is (214) 250-9043.

### B. State Actor Defendants

65. **Hon. Andrea Stroh Tho**mpson is the elected Judge of the 416th Judicial District Court of Collin County, Texas. She is a state official exercising governmental authority. She is sued in her official capacity for prospective declaratory and injunctive relief pursuant to *Ex Parte Young,* and in her individual capacity for monetary damages for non-judicial, administrative acts, including:

   a.  Adopting *"submission-only"* procedures without legal authority or proper notice;

   b.  Directing staff to transmit unfiled documents;

   c.  Accepting filings from unauthorized counsel;

   d.  Permitting **'–AST'** docket annotations to be added outside any signed order or hearing record;

   e.  Failing to rule on any of Plaintiff's 70+ verified motions, and

   f.  Ratifying constitutional violations through deliberate inaction despite documented complaints.

**66. Steven Janway** is the Court Coordinator for the 416th District Court of Collin County, Texas. He is a state employee exercising governmental authority. He is sued in both his individual and official capacities for:

    a. Controlling hearing settings and refusing to schedule Plaintiff's motions;

    b. Transmitting unfiled documents, including the purported August 29 order;

    c. Selectively responding to and assisting unauthorized counsel while ignoring Plaintiff;

    d. Relying on private party representations to deny Plaintiff access to the court process; and

    e. Violating the County's official neutrality policy by providing preferential treatment to represented parties.

### C. Private Party Defendants

**67. Kyle G. Basinger** is an attorney licensed in Texas and a Partner at Goranson Bain Ausley, PLLC. He was the last known attorney of record for the Respondent in the underlying case. He is sued in his individual capacity for:

    a. Making false statements to court personnel, denying his attorney-of-record status;

    b. Causing Janway to refuse Plaintiff's hearing requests based on those false statements;

    c. Conspiring with other Defendants to deprive Plaintiff of access to judicial process; and

    d. Subsequently admitting on August 5, 2025, that he had *"continuously served as attorney of record for Respondent since his initial appearance in this cause."*

    *e.* **Basinger has a documented history of procedural irregularities,** including *In re O'Connor* (2005) and *Cary v. State (*2014).

68. **Mona Hosseiny-Tovar** is an attorney licensed in Texas, employed by Goranson Bain Ausley, PLLC. She is sued in her individual capacity for:

    a. Filing an unauthorized Entry of Appearance on April 28, 2025, without complying with **TRCP 8** designation requirements;

    b. Continuing to file documents in violation of the **TRCP 12** mandatory stay after Plaintiff filed his **Rule 12** Challenge;

    c. Fabricating a **"Discovery Control Plan"** on August 25, 2025, styled as a court order but never filed with the Court;

    d. Sending threatening emails to Plaintiff while he was being denied access to the process;

    e. Making false statements about **Rule 12** rulings on November 5, 2025, and

    f. Admitting on August 5, 2025, that "no **TRCP 10** withdrawal or **TRCP 8** designation existed."

69. **Nicole Gracey** is a paralegal at Goranson Bain Ausley, PLLC, and the firm's designated eService contact. She is sued in her individual capacity for:

    a. Filing four proposed orders on August 5, 2025, between 4:02 PM and 4:09 PM without any accompanying motion or hearing;

    b. Coordinating communications with court staff to facilitate improper *ex parte* filings; and

    c. Participating in the coordinated scheme to deny Plaintiff access to the judicial process.

70. **Goranson Bain Ausley, PLLC** is a Texas Professional Limited Liability Company engaged in the practice of law, with its principal place of business at 8117 Preston Road, Suite 700, Dallas, Texas 75225. The firm is:

    a. Vicariously liable for the acts of its employees: Basinger, Hosseiny-Tovar, and Gracey;

    b. A state actor through joint action and pervasive entwinement with court personnel, and

    c. Directly liable for its pattern of procedural manipulation that deprived Plaintiff of constitutional rights.

    a. **Lacey Alexis Clement** is the Respondent in the underlying state court proceeding. She resides at 7712 Rocky Mountain Lane, McKinney, Texas 75070. She is sued in her individual capacity for:

        a. Executing a false declaration to support substituted service;

        b. Claiming personal knowledge of process server attempts that she could not have witnessed;

        c. Violating **Texas Rule of Evidence 602** (personal knowledge requirement); and

        d. Violating **TRCP 106(b)** (requirements for substituted service).

*D. Municipal Defendant*

71. **Collin County, Texas,** is a political subdivision of the State of Texas, subject to suit under **42 U.S.C. § 1983** pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The County employs Defendants Thompson (as elected official) and Janway (as court coordinator), and maintains official policies, customs, and practices whose discriminatory application caused Plaintiff's constitutional injuries.

## E. Doe Defendants

**72.** Doe Defendants 1-10 are unidentified clerical or administrative personnel employed by Collin County or the 416th District Court who:

    a. Assisted in suppressing Plaintiff's filings;

    b. Made or permitted alterations to the electronic docket;

    c. Refused to preserve metadata as requested; and

    d. Participated in the coordinated scheme to deny Plaintiff access to the process.

**73.** Plaintiff reserves the right to amend this Complaint to name Doe Defendants when their identities are discovered through discovery.

## VII. FACTUAL ALLEGATIONS

### A. Background

75. On April 10, 2025, Plaintiff filed a verified Motion to Terminate Child Support in the 416th District Court of Collin County, Texas, invoking continuing jurisdiction under Texas Family Code § 155.001.

76. At that time, Defendant Basinger was the last known attorney of record for the Respondent. No **TRCP 10** withdrawal had been filed. No **TRCP 8** designation existed for any successor attorney.

77. Under **Texas Rule of Civil Procedure 10**, an attorney's representation continues until: (a) a written substitution of counsel is filed; (b) the attorney's motion to withdraw is granted; or (c) the case is concluded. None of these conditions had been met.

### B. Basinger's False Statements (April 2025)

78. On April 16, 2025, at 9:06 PM, Defendant Basinger sent an email to Plaintiff and Defendant Janway stating: *"Just to be clear, I have not been retained to represent Ms. Clement and have not spoken to her."*

79. On April 17, 2025, at 7:30 AM, Basinger stated in an email: *"My representation ended when the last order was signed... you have to serve her."*

80. On April 17, 2025, at 12:03 PM, Basinger stated: *"I am no longer the attorney of record once the case is closed."*

81. On April 17, 2025, at 2:03 PM, Basinger stated: *"you cannot efile a motion and proposed order to an attorney from years ago that has not been retained."*

82. Each of these statements was false under **TRCP 10.** Basinger remained the attorney of record because no withdrawal had been filed and no substitution had occurred.

83. On August 5, 2025, Basinger's own firm admitted in a verified filing: *"Mr. Basinger has continuously served as attorney of record for Respondent since his initial appearance in this cause."*

84. On July 23, 2025, Basinger sent an email stating: **"If we want to show up tomorrow, we can make our arguments..."** The use of *"we"* demonstrated his continued participation in and knowledge of the representation.

## C. Basinger's False Statements and Interference with Court Personnel (April 2025)

85. On April 10, 2025, Plaintiff filed a verified Motion to Terminate Child Support in the 416th District Court. At that time, Defendant Kyle G. Basinger was the last attorney of record for Respondent. Under **Texas Rule of Civil Procedure 10**, an attorney's representation continues until: (a) a written substitution of counsel is filed; (b) the attorney's motion to withdraw is granted; or (c) the case is concluded. None of these conditions had occurred. No **TRCP 10** withdrawal had been filed. No substitution of counsel existed. Basinger remained attorney of record as a matter of law.

86. Beginning April 16, 2025, Defendant Basinger sent a series of emails to both Plaintiff and Defendant Janway containing knowingly false statements about his representation status. Each email was sent to the Court Coordinator, placing false information directly before a judicial employee:

a. **April 16, 2025, 9:06 PM** — Basinger emailed Plaintiff and Court Coordinator Janway: ***"Just to be clear, I have not been retained to represent Ms. Clement and have not spoken to her."***

b. **April 17, 2025, 7:30 AM** — Basinger emailed Plaintiff and Court Coordinator Janway: ***"My representation ended when the last order was signed... If you want to restart the case, then you have to serve her."***

c. **April 17, 2025, 12:03 PM** — Basinger emailed Plaintiff and Court Coordinator Janway: ***"Yes, but I am no longer the attorney of record once the case is closed."***

d. **April 17, 2025, 2:03 PM** — Basinger emailed Plaintiff and Court Coordinator Janway: ***"you cannot efile a motion and proposed order to an attorney from years ago that has not been retained."***

87. Each of these statements was false under **Texas Rule of Civil Procedure 10.** Basinger had never filed a motion to withdraw. No court order granted withdrawal. No substitution of counsel had occurred. The case had continuing jurisdiction under **Texas Family Code § 155.001.** As a licensed Texas attorney, Basinger is presumed to know the rules governing his own representation. His statements were not mistakes; they were deliberate misrepresentations to a court employee designed to obstruct Plaintiff's access to the judicial process.

### D. Janway's Reliance on Basinger's False Statements

88. On April 17, 2025, in direct response to Basinger's false statements, Defendant Janway emailed Plaintiff: *"We are not able to set a hearing for you. Mr. Basinger stated he is not the attorney of record and that service was not proper."*

89. This email establishes that: (a) Janway received Basinger's false statements directly; (b) Janway relied on those statements without independent verification; (c) Janway refused to perform his ministerial duty to schedule hearings based solely on a private party's unverified representations; and (d) a state official denied Plaintiff access to the courts because of a private attorney's false statements.

90. Janway's reliance on Basinger's false statements was the proximate cause of Plaintiff's initial exclusion from the judicial process. But for Basinger's lies, Janway would have scheduled Plaintiff's hearing in April 2025. The nine months of procedural deprivation that followed 70+ ignored motions, fabricated hearings, void orders, and $82,370 in sanctions flow directly from this initial fraud.

### E. Plaintiff's Filings Documenting and Challenging Basinger's False Statements

91. Plaintiff immediately documented Basinger's false statements and sought judicial resolution:

    a. **April 21, 2025** — Plaintiff filed a **Motion to Determine Attorney of Record and Clarify Procedural Standing**, attaching Basinger's emails as exhibits and requesting an expedited hearing to resolve the representation issue. No hearing was ever granted.

b. **April 29, 2025** — Plaintiff filed a **Supplemental Brief to Determine Attorney of Record**, including **Exhibits A through D** containing Basinger's written admissions demonstrating he had never withdrawn nor substituted out.

c. **April 30, 2025** — Plaintiff filed a **Motion to Strike Defective Entry of Appearance** after Hosseiny-Tovar's unauthorized appearance on April 28, 2025.

d. **May 6, 2025** — Plaintiff filed a **Motion to Compel Ruling and Set Hearing on Ripe Motions**.

e. **July 24, 2025** — Plaintiff filed a **Second Motion to Compel Hearing on Motion to Determine Attorney of Record**.

f. **August 8, 2025** — Plaintiff filed a **Motion and Notice of Admission and Request for Immediate Findings Regarding Attorney of Record Status**, containing a Contradiction Chart documenting Basinger's false statements alongside the August 5 admission.

g. None of these motions received a hearing. None received a ruling. The Court's refusal to address Basinger's false statements allowed the fraud to continue and expand.

### F. Hosseiny-Tovar's Unauthorized Entry and Coordinated Scheme

92. On April 28, 2025, eleven days after Basinger's false denials to Janway, Defendant Hosseiny-Tovar filed an unauthorized "Entry of Appearance and Designation of Lead Counsel." This filing was procedurally defective:

93. No **TRCP 10** withdrawal was filed for Basinger; **(b)** No **TRCP 8** designation was filed authorizing Hosseiny-Tovar to appear; **(c)** No substitution of counsel was executed or

approved by the court; **(d)** The Entry of Appearance was not accompanied by any pleading, motion, or response as required by Texas procedural rules.

94. The timing reveals the scheme: Basinger falsely denies representation to block Plaintiff's access → Hosseiny-Tovar enters without proper designation → She gains the access Plaintiff was denied → The firm maintains control while creating confusion about who represents Respondent.

95. On April 30, 2025, Plaintiff filed a **Rule 12 Challenge** to Hosseiny-Tovar's authority to represent. Under **TRCP 12(b),** *"no further proceedings shall be had in the cause until such motion is heard and determined."* Despite this mandatory stay, Hosseiny-Tovar continued filing documents throughout May, June, July, and August 2025.

### G. The August 5, 2025 Admission: Proof of Fraud or Perjury

96. On August 5, 2025, Defendant Hosseiny-Tovar filed a **Response to Petitioner's Motion to Determine Attorney of Record**. This verified filing contained a sworn admission: *"Mr. Basinger has continuously served as attorney of record for Respondent since his initial appearance in this cause."*

97. The same August 5, 2025 filing also admitted: *"no TRCP 10 withdrawal or TRCP 8 designation existed."*

98. These admissions are irreconcilable with Basinger's April 2025 statements. If the August 5 verified statement is true that Basinger *"continuously served as attorney of record"* then every statement Basinger made to Janway in April 2025 was knowingly false:

| Date | Basinger's Statement | Truth (Per August 5 Admission) |
|---|---|---|
| April 16, 9:06 PM | *"I have not been retained"* | **FALSE** — He continuously served as AOR |
| April 17, 7:30 AM | *"My representation ended"* | **FALSE** — He continuously served as AOR |
| April 17, 12:03 PM | *"I am no longer the attorney of record"* | **FALSE** — He continuously served as AOR |
| April 17, 2:03 PM | *"attorney from years ago that has not been retained"* | **FALSE** — He continuously served as AOR |

99. Alternatively, if Basinger's April 2025 statements were factual, then the August 5, 2025 verified filing constitutes perjury under **Texas Penal Code § 37.02** (Perjury) and **§ 37.03** (Aggravated Perjury), because it was made under oath in connection with an official proceeding and was material to the outcome. There is no innocent explanation for this contradiction. Either: **(a)** Basinger knowingly lied to Janway in April 2025 to obstruct Plaintiff's access to the courts, and the August 5 admission is valid; or **(b)** Basinger's April 2025 statements were factual, and the August 5 verified filing is perjury. **Either way, Defendants perpetrated fraud upon the court.**

### H. Basinger's Continued Participation Despite Denials

100. Even while claiming he was *"not the attorney of record,"* Basinger continued to participate in the litigation. On July 23, 2025, Basinger emailed the Court Coordinator: *"If

*we want to show up tomorrow, we can make our arguments, and Mr. Lonsford's response will be considered by submission?"*

101.   The use of *"we"* demonstrates Basinger's continued participation in and knowledge of the representation. This email, sent while Basinger was supposedly "not the attorney of record," contradicts his April denials and proves he remained actively involved in litigation strategy.

102.   Basinger was also included on the September 2, 2025, *"Service Only"* transmission of the void August 29 order listed at three separate email addresses, demonstrating his continued participation in the communication channel between his firm and court staff.

### I. Basinger's Interference with Public Duties

*103.*   Basinger's conduct constitutes interference with a public servant's duties under *Texas Penal Code § 38.15: "A person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with a public servant while the public servant is performing a duty or exercising authority imposed or granted by law."*

104.   Janway is a public servant. Janway's duty includes scheduling hearings for litigants. Basinger interfered with that duty by providing Janway with false information, leading Janway to refuse Plaintiff's hearing requests. This was not a single incident but a pattern of interference across multiple emails over multiple days.

105.   Basinger's interference was not passive; he actively inserted himself into communications between Plaintiff and the Court Coordinator, specifically to block Plaintiff's access. A person who claims he is *"not the attorney of record"* has no legitimate reason to intervene in scheduling discussions. Basinger's intervention was designed to obstruct, not to clarify.

### J. The Materiality and Causation of Basinger's Fraud

106.    Basinger's false statements were not collateral or harmless. They were the direct and proximate cause of Plaintiff's exclusion from the judicial process: **(a)** April 17, 2025: Janway refuses to schedule Plaintiff's hearing, citing Basinger's statements **(b)** April-August 2025: Plaintiff files 70+ motions; none are scheduled or ruled upon **(c)** August 29, 2025: 18 motions denied without hearing in a **void "order"** never properly filed **(d)** November 7, 2025: Fabricated hearing before unauthorized judge; $82,370 in sanctions **(e)** February 10, 2026: Pattern continues with another hearing scheduled without valid service

107.    The causal chain is unbroken: Basinger's lies → Janway's reliance → Plaintiff's exclusion → Nine months of fabricated process. Each subsequent violation traces back to Basinger's initial fraud.

### K. Pre-empting Dismissal Arguments Based on Basinger's Fraud

108.    Defendants cannot claim *"good faith"* reliance on ambiguous rules. **TRCP 10** is unambiguous. An attorney remains counsel of record until withdrawal is granted by court order. Basinger never sought or obtained such an order. His statements to Janway were knowingly false.

109.    Defendants cannot claim lack of materiality. Janway's April 17 email explicitly states he relied on Basinger's statements to deny Plaintiff's hearing. The causal chain is documented in the Defendants' own words.

110.    Defendants cannot claim qualified immunity for fraud. There is no qualified immunity for knowingly false statements that corrupt judicial proceedings. A reasonable attorney would know that lying to court staff about his representation status, for the purpose of

obstructing an opposing party's access to the courts, violates clearly established constitutional rights.

111.   Defendants cannot invoke Rooker-Feldman because the fraud preceded any court ruling. The injury of being denied access based on false statements is independent of any subsequent order. The fraud infected the process before any judgment was entered.

112.   Defendants cannot claim the August 5 admission cured the fraud. The admission came four months after the fraud began. During those four months, Plaintiff was denied access to the courts, his motions were ignored, and unauthorized counsel obtained preferential treatment. The belated admission does not restore what was taken.

### L. Summary: The Fraud That Started It All

113.   Defendant Basinger made four knowingly false statements to Court Coordinator Janway in April 2025, claiming he was not the Respondent's attorney of record. Janway relied on those statements to deny Plaintiff's hearing requests. For the next four months, Plaintiff was locked out of the judicial process while Basinger's colleague Hosseiny-Tovar, who entered without proper authorization, received preferential access. On August 5, 2025, Basinger's own firm admitted under oath that he had "continuously served as attorney of record"— proving every April statement was a lie. The contradiction is irreconcilable: either the April statements were fraudulent, or the August verification was perjury. Either way, Defendants corrupted the judicial process, and everything that followed the void August 29 order, the fabricated November 7 hearing, the $82,370 in sanctions, the continuing February 10 scheme, is the fruit of that original fraud.

## FILINGS DOCUMENTING AND PRESERVING THIS FRAUD

| Date Filed | Document Title | Purpose |
|---|---|---|
| April 21, 2025 | Motion to Determine Attorney of Record | First challenge to Basinger's status |
| April 29, 2025 | Supplemental Brief to Determine Attorney of Record | Attached Basinger's emails as exhibits |
| April 30, 2025 | Motion to Strike Entry of Appearance | Challenged Hosseiny-Tovar's unauthorized entry |
| April 30, 2025 | Rule 12 Challenge to Hosseiny-Tovar | Invoked mandatory stay under TRCP 12(b) |
| May 6, 2025 | Motion to Compel Ruling | Sought ruling on pending motions |
| July 24, 2025 | Second Motion to Compel Hearing on AOR | Renewed request for ruling |
| July 25, 2025 | Motion to Preserve Docket Metadata | Documented § 1983 preservation |
| August 7, 2025 | Motion to Strike August 5 Response | Challenged false statements in Response |
| August 8, 2025 | Motion and Notice of Admission | Documented contradiction with chart |
| November 3, 2025 | Rule 12 Motion to Show Authority (Basinger) | Formal Rule 12 challenge to Basinger |
| November 3, 2025 | Rule 12 Motion to Show Authority (Hosseiny-Tovar) | Formal Rule 12 challenge to Hosseiny-Tovar |
| November 5, 2025 | Notice of Non-Appearance | Preserved objections to November 7 |
| November 13, 2025 | Verified Objection and Motion to Strike | Documented November 7 void hearing |

| Date Filed | Document Title | Purpose |
|---|---|---|
| November 19, 2025 | Supplemental re: August 29 Order | Proved order never filed by Clerk |

114. *This comprehensive documentation establishes that Plaintiff contemporaneously identified, documented, and challenged the fraud at every stage. The failure of Texas courts to address these documented violations demonstrates the structural unavailability of state remedies and the necessity of federal intervention under 42 U.S.C. § 1983.*

### M. Janway's Discriminatory Conduct

115. On April 17, 2025, Defendant Janway sent an email to Plaintiff stating: *"We are not able to set a hearing for you. Mr. Basinger stated he is not the attorney of record and that service was not proper."*

116. This email demonstrates is just one example of numerous scheduling emails: (a) Janway refused to perform his ministerial duty to schedule hearings; (b) Janway relied on a private party's representations **without independent verification; (c) those representations were demonstrably false under TRCP 10.**

117. Meanwhile, Janway provided preferential treatment to opposing counsel. On August 25, 2025, he sent an email to Hosseiny-Tovar stating: *"I have the following dates open next week. Let me know what works for you."*

118. Between April and November 2025, Plaintiff submitted over seventy (70) verified motions, objections, judicial notices, and hearing requests. **None were acknowledged or scheduled for a hearing. Janway complied with Basinger's instructions to ignore Plaintiff while simultaneously providing scheduling assistance to unauthorized opposing counsel.** After Basinger's extrajudicial intervention in April 2025, Janway ceased all communication with

*Lonsford v. Thompson, et al. — Verified Complaint Under 42 U.S.C. § 1983*

39

Plaintiff entirely, a "procedural blackout" that continued through November 2025. Plaintiff submitted over sixty-seven documented communications to Janway, including certified hearing requests, judicial letters, and four formal Motions for Status Conference. Not a single response was ever received. Meanwhile, Janway treated Hosseiny-Tovar as counsel of record despite her lack of authorization: he scheduled submission hearings at her request, issued orders relying on her filings, and on August 25, 2025 emailed her directly offering scheduling options *("I have the following dates open next week. Let me know what works for you")*. This converted a private, unauthorized practice into a state-enabled deprivation. Janway operated as a *"conduit"* for opposing counsel's objectives, blurring the boundary between public process and private influence.

### N. Hosseiny-Tovar's Unauthorized Appearance and Fabrications

119.  On April 28, 2025, Defendant Hosseiny-Tovar filed an **"Entry of Appearance"** that was procedurally defective under Texas law. Specifically:

   a.  No **TRCP 10** withdrawal was filed for Basinger;

   b.  No **TRCP 8** designation was filed authorizing Hosseiny-Tovar to appear; and

   c.  No substitution of counsel was executed.

120.  On August 5, 2025, Hosseiny-Tovar's own verified filing admitted: *"no TRCP 10 withdrawal or TRCP 8 designation existed."*

121.  On April 30, 2025, Plaintiff filed a **Rule 12** Challenge to Hosseiny-Tovar's authority to represent. Under **TRCP 12,** when a party challenges an attorney's authority, *"no further proceedings shall be had in the cause"* until the challenged attorney shows written authority.

122.  Despite this mandatory stay, Hosseiny-Tovar continued filing documents in violation of **TRCP 12.**

123.   On August 25, 2025, Hosseiny-Tovar transmitted by email a fabricated document styled as a "Discovery Control Plan." This document:

a.   Was formatted to appear as a court order;

b.   Designated retired Judge Chris Oldner as mediator without any court appointment;

c.   Imposed 24-hour compliance deadlines;

d.   Was never filed with the Court; and

e.   Had no legal effect but was designed to intimidate and mislead Plaintiff.

124.   On July 18 and July 21, 2025, Hosseiny-Tovar sent threatening emails to Plaintiff stating: *"a default judgment may be rendered against you,"* while Plaintiff was simultaneously being denied any access to the judicial process.

125.   On November 5, 2025, Hosseiny-Tovar made a false statement in an email: *"The Court has already ruled on your Rule 12 Motions on August 29th."*

126.   In the same email chain, she contradicted herself by acknowledging: *"if you want to start with your Rule 12 Motion first, you can argue it with the Court then,"* proving she knew the **Rule 12** motions remained pending and had not been ruled upon.

### *O. Clement's False Declaration*

127.   Defendant Clement executed a false declaration to support a motion for substituted service. In this declaration, Clement claimed personal knowledge of attempts by a process server that she could not have witnessed.

128.   This declaration violated:

a.   **Texas Rule of Evidence 602,** which requires that a witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter; and

*Lonsford v. Thompson, et al. — Verified Complaint Under 42 U.S.C. § 1983*

b. **TRCP 106(b),** which governs the requirements for substituted service.

### P. Gracey's Ex Parte Filings

129. On August 5, 2025, Defendant Gracey filed four proposed orders between 4:02 PM and 4:09 PM. These filings:

    a. Were not accompanied by any motion;

    b. Were not the subject of any hearing;

    c. Were made without Plaintiff's knowledge or opportunity to respond; and

    d. Were designed to obtain improper *ex parte* relief.

    e. Further, she was always copied on all email communications and notice of service for all filings.

### Q. Thompson's Administrative Failures

130. Between April and November 2025, Plaintiff filed eighteen (18) verified dispositive motions. Defendant Thompson failed to rule on any of them. The motions included:

    a. Motion to Determine Attorney of Record;

    b. Rule 12 Challenge;

    c. Verified Motion to Quash Substitute Service;

    d. Motion to Strike Unauthorized Appearance;

    e. Motion to Preserve Docket Metadata; and

    f. Multiple Judicial Letters documenting constitutional violations.

131. The pattern of procedural manipulation extended beyond mere inaction to affirmative misconduct:

On June 26, 2025, a revised proposed order falsely stated that the Court had *"considered"* Plaintiff's Motion for Substitute Service, **despite no hearing ever being held, no notice ever being issued, and no ruling on Plaintiff's verified objections.**

On August 26, 2025, a Dismissal for Want of Prosecution (DWOP) was unilaterally placed on the docket without any motion by either party, without any party request, and without service on Plaintiff.

    a.  After Plaintiff filed his Motion to Preserve Docket Metadata on July 25, 2025, the court altered the public docket, changing the scope of a submission hearing and adding time designations—all without motion, order, or notice to Plaintiff.

    b.  The August 29, 2025 order contained internal contradictions demonstrating its arbitrary nature: while purporting to deny all eighteen pending motions, the order simultaneously instructed the parties to contact the court coordinator to set trial dates on motions that were supposedly included in the submission docket. **This contradiction, denying motions while directing that they be set for trial, reveals that the order was not the product of judicial deliberation but an administrative fabrication designed to clear the docket without adjudication.**

132.  Thompson received documented complaints about Janway's discriminatory conduct but took no corrective action.

133.  Thompson's failures were administrative, not judicial, acts. They are not protected by absolute judicial immunity. See *Mireles v. Waco,* 502 U.S. 9 (1991); *Forrester v. White,* 484 U.S. 219 (1988).

134.   Under **Texas Government Code § 74.093,** Thompson was the final policymaker for court administration in her courtroom. Her failure to address documented violations despite actual knowledge constitutes ratification of constitutional violations.

### R. The Void August 29, 2025 Order And Fabricated Hearing

135.   On or about August 29, 2025, a purported *"ruling"* was issued in Cause No. 416-52432-2012. However, this **document was not a valid judicial order:** It was never filed with, entered by, or served through the Collin County District Clerk's office. It bore no clerk's file stamp, no docket entry, and no **TRCP 306a(3**) Notice of Judge's Signing. The eFileTexas.gov notification shows it was transmitted as a "Service Only" filing by Court Coordinator and Defendant Steven Janway (not the District Clerk), labeled "Notification of Service for filing" with "Filed By: Steven Janway." This *"Service Only"* function is for user-initiated service notifications only and does not constitute official filing, entry, or Clerk-performed service under Texas rules. The service list improperly included outdated counsel, multiple duplicate addresses for Defendant Kyle Basinger, and irrelevant paralegal emails to recipients that appear exclusively for *"Service Only"* transmissions and never for official Clerk service. The *"Ruling"* contained no file stamp, no clerk markings, no notation of filing, and was uploaded four days later via this improper channel. Under Texas law, a judge's signature alone does not create a binding order; it must be filed, entered, and served by the Clerk to have legal existence. See Izen v. Pasadena ISD, No. 14-20-00056-CV, 2022 WL 1231233 (Tex. App.—Houston [14th Dist.] Apr. 26, 2022); Hanks v. Hanks, No. 05-20-00867-CV, 2022 WL 1076178 (Tex. App.—Dallas Apr. 11, 2022).

136.   The November 7, 2025 hearing setting relied on this nonexistent August 29 **"ruling"** and was itself unauthorized and ***void ab initio.*** It was never served on Plaintiff via **TRCP 21a,**

not properly noticed under **TRCP 245,** appeared only on the online docket without a Scheduling Order or notice of trial, and proceeded while Plaintiff's mandatory Verified **Rule 12** Motions challenging opposing counsel's authority remained pending and unresolved (including Motions to Set **Rule 12** Hearings and to Strike the Setting). No valid assignment order existed from the regional presiding judge of the 1st Administrative Judicial Region for the visiting/retired judge who allegedly presided, as required by **Tex. Gov't Code §§ 74.055–74.059.** Despite Plaintiff's multiple verified objections, motions to strike, and Verified Notice of Non-Appearance detailing these defects, Coordinator Janway maintained the setting without jurisdiction and did not respond to requests for clarification.

137. These acts, unauthorized presiding, improper transmission of a fabricated "ruling," bypassing official Clerk/e-filing protocols, and proceeding with a sham hearing, constitute administrative irregularities and procedural fabrications, not legitimate judicial adjudication.

138. On September 2, 2025, a document purporting to be an August 29, 2025 order appeared on the electronic docket. This document:

    a. Denied eighteen (18) pending motions;

    b. Was issued without any hearing;

    c. Was issued without any notice to Plaintiff;

    d. Was issued without any findings of fact or conclusions of law;

    e. Deprived Plaintiff of any opportunity to be heard;

    f. Was interlocutory in nature, not a final judgment, thereby foreclosing Plaintiff's right to direct appeal under **Texas Rule of Appellate Procedure 26.1;** and

    g. Left Plaintiff in procedural limbo: denied process at the trial court level, denied appellate review because the order was not final, and denied mandamus relief when

both the Fifth Court of Appeals and Texas Supreme Court rejected his petitions for *mandamus* without opinion.

    h. The order was never properly filed. File metadata indicates the document was created on September 2, 2025, suggesting the document was backdated.

139. Under *Peralta v. Heights Medical Center, Inc.,* 485 U.S. 80 (1988), a judgment entered without notice or opportunity to be heard is **void.**

140. Defendant Janway transmitted this unfiled document to Plaintiff, marked **"Service Only"** acknowledging that it was not a properly filed court order.

## S. Docket Manipulation

141. On July 25, 2025, Plaintiff filed a Motion to Preserve Docket Metadata documenting "– AST" retroactive edits to the electronic docket. These annotations:

    a. Were added outside any signed order or hearing record;

    b. Appeared to alter the procedural history of the case;

    c. Were made without transparency regarding timing, authorization, or purpose; and

    d. The Motion to Preserve was ignored. No ruling was entered. No explanation was provided.

    e. Such manipulation of court records mirrors the fraud on the court condemned in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238 (1944).

142. Plaintiff seeks discovery of the complete Case Management System (CMS) audit trail, including:

    a. All timestamps for docket entries and modifications;

    b. User identification for all entries and alterations;

    c. System object IDs tracking document history; and

    d.  Any deleted or modified entries.

    e.  *See In re Blair, 408 S.W.3d 843 (Tex. App.—Houston [14th Dist.] 2013); In re Waste Management of Texas, Inc., 392 S.W.3d 861 (Tex. App.—Texarkana 2013).*

### T. November 7, 2025 Fabricated Proceeding

143.  On November 7, 2025, a purported ***"hearing"*** was conducted in Plaintiff's case. This proceeding was constitutionally defective because:

    a.  It was conducted before retired Judge Charles H. Stokes;

    b.  No assignment order authorized Stokes to preside;

    c.  Under **Texas Government Code § 74.053(b),** visiting judges may only be assigned by the Presiding Judge of the Administrative Judicial Region, and no such assignment exists;

    d.  Plaintiff's case was not on the docket for that date;

    e.  Defendant Thompson was present in the same courthouse presiding over other matters, but did not hear Plaintiff's case; and

    f.  The proceeding was based on documents that were never properly filed.

144.  On November 7, 2025, the official docket for the 416th District Court reflects that Judge Andrea Thompson presided over three separate cases: Cause Nos. 416-08950-2025, 416-08954-2025, and 416-56977-2025. This confirms that Judge Thompson was fully available and acting as the sitting judge of the 416th District Court on that date.

145.  Despite Judge Thompson's active presence on the bench that day, Plaintiff's matter was conducted by an unassigned visiting judge, Charles Stokes, for whom no Assignment Order exists and who lacked statutory authority to preside under **Texas Government Code § 74.053(b).**

146. The official Collin County docket history for Plaintiff's case purports to show that on November 7, 2025, the Court *"called the case," "called the hallway for Petitioner," "held a hearing," and "signed an order."* These statements are demonstrably false. Plaintiff's case was not on the November 7 docket; no hearing was ever scheduled through the clerk; no notice of hearing was ever issued; no Assignment Order existed for the visiting judge; and the August 29 *"ruling"* used to justify the setting was never filed with the Clerk.

147. The County's own docket entry, therefore, memorializes a hearing that did not legally occur, constituting a false official record and additional evidence of administrative fabrication executed outside all lawful judicial channels.

148. On November 6, 2025, Plaintiff filed a Notice of Non-Appearance, explicitly objecting to the unauthorized proceeding, challenging Judge Stokes's lack of assignment authority, and preserving all jurisdictional objections. Plaintiff stated his refusal to participate in a void hearing and documented that his non-appearance was a deliberate preservation of rights rather than a failure to appear.

150.  Because Judge Stokes lacked jurisdiction to preside, any orders entered are v*oid ab initio.* Plaintiff filed a Notice of Non-Appearance on November 6, 2025, explicitly preserving his objections to the unauthorized proceeding and stating his refusal to participate in a void hearing conducted without lawful authority. Plaintiff did not appear on November 7, 2025, and his absence was a deliberate preservation of rights, not a default or waiver. Appearing before an unauthorized judge would have risked waiving jurisdictional objections and lending legitimacy to a proceeding that was void from inception.

151.  The false docket entry created to memorialize this non-existent proceeding constitutes additional evidence of the coordinated scheme to deprive Plaintiff of constitutional rights. The false docket entry created to memorialize this non-existent proceeding constitutes additional evidence of the coordinated scheme to deprive Plaintiff of constitutional rights. Despite Plaintiff's filed Notice of Non-Appearance and his documented objections to the proceeding's validity, the docket falsely reflects that the Court *"called the hallway for Petitioner,"* implying Plaintiff failed to appear for a legitimate hearing rather than deliberately refusing to participate in a void proceeding.

### U. Fraud on the Court

152.  Because the rulings and docket alterations at issue were made on a manipulated record, all resulting orders are vitiated under the *"fraud-upon-the-court"* doctrine. See *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238 (1944); *King Ranch v. Chapman,* 118 S.W.3d 742 (Tex. 2003).

153.  Fraud upon the court includes conduct that defiles the court itself or is perpetrated by officers of the court so that the judicial machinery cannot perform in its usual manner. **The coordinated conduct alleged herein, including docket manipulation, backdating, the**

creation of fabricated documents, false statements, and proceedings without jurisdiction, constitutes fraud on the court.

### V. The Continuing Denial of Access: Post-November 7 Conduct

154. On November 7, 2025, despite Plaintiff's timely-filed Notice of Non-Appearance and Objection to Void Hearing Setting (filed November 5, 2025), Defendant Janway and unauthorized visiting Judge Charles Stokes conducted a proceeding that was not on the 416th District Court's official docket, for which no assignment order existed, on a motion (Plaintiff's Motion to Terminate) that had never been set for hearing, while the docket reflected only *"Trial Before the Court – Enforcement."*

155. The resulting **"Order Denying Motion to Terminate Child Support and Request for Offset, Confirmation of Overpayment, and Final Modification of Support Order and Order Imposing Sanctions"** was drafted by Defendant Hosseiny-Tovar, as evidenced by her signature block stating **"APPROVED AS TO FORM,"** and **imposed sanctions against Plaintiff totaling $27,370.00 in attorney's fees, $55,000.00 in additional attorney's fees for appeal, and up to $35,000.00 in contingent appellate fees** all arising from a hearing for which Plaintiff was never served, never noticed, and which was conducted by a judge with no assignment order.

156. The November 7 Order falsely stated that Plaintiff was *"duly notified of the trial"* and *"failed to appear, and after calling the hall, the Court found Petitioner to be in default."* These statements are demonstrably false: (a) Plaintiff was never served under **TRCP 21a;** (b) Plaintiff was never provided **45-day notice** under **TRCP 245;** (c) Plaintiff's case was not on the November 7 docket; (d) Plaintiff filed a verified Notice of Non-Appearance two days prior

explaining exactly why the hearing was void; and (e) the docket entry's reference to **"calling the hall"** memorializes theater performed for a hearing that had no legal existence.

### X. Opposing Counsel's Admission: Enforcement Was Not Heard on November 7

157.    On November 12, 2025, five days after the purported November 7 **"trial on all matters,"** Defendant Hosseiny-Tovar emailed Defendant Janway stating: **"May we please have the court's available dates for the setting of Ms. Clement's Motion for Enforcement? Preferably dates that are 3+ months out."**

158.    This email constitutes an admission against interest establishing that: (a) the Motion for Enforcement was NOT heard on November 7, 2025; (b) the November 7 proceeding was NOT a **"trial on all matters"** as represented; (c) the November 7 Order is NOT a final judgment under *Lehmann v. Har-Con Corp.,* 39 S.W.3d 191 (Tex. 2001), because it did not dispose of all pending claims; and (d) Defendants knew the November 7 proceeding was procedurally defective yet proceeded to schedule another hearing using the same void process.

159.    On November 20, 2025, Defendant Janway responded to Defendant Hosseiny-Tovar, offering available dates: **"The Court can set this for February 2, 9, 10, 11, 12 or 13, 2026 at 9 am. Please advise."** Defendant Janway did not respond to any of Plaintiff's pending motions, objections, or requests for hearing during this same period.

### *Y. The February 10, 2026 Setting: Repetition of the Void Process*

160.  On December 8, 2025, Defendant Hosseiny-Tovar emailed Defendant Janway requesting that **"Ms. Clement's Motion for Enforcement"** be scheduled for February 10, 2026. She attached a document claiming she had *"conferred with the other side and has not received any objections in 14 days."* This representation was false. Plaintiff had filed verified objections on November 13 and November 19, 2025, both of which remained pending and unruled upon.

161.  That same day, Defendant Janway responded: *"I have this on the Court's docket for February 10, 2026 at 9am. Please properly notify all parties. Also please efile your correspondence on the case."* (Emphasis added.) Defendant Janway's instruction to opposing counsel to *"properly notify all parties"* demonstrates that even the Court Coordinator recognized the obligation to provide valid service, an obligation that Defendants have repeatedly failed to fulfill with respect to Plaintiff.

162.  Rather than providing valid service under **TRCP 21a** or **TRCP 245,** Defendant Gracey filed a document titled **"Correspondence to Paul Lonsford Regarding Enforcement Setting"** via eFileTexas on December 8, 2025. The eFileTexas notification for this filing categorized Plaintiff under **"Other Service Contacts not associated with a party on the case,"** the same defective service designation used for the void August 29, 2025 order. A paralegal's *"correspondence"* is not a Citation, not a Notice of Hearing signed by the Clerk, and does not satisfy **TRCP 21a** or **TRCP 245.**

163.  On December 22, 2025, a **"Request for Issuance – Citation & Notice"** was filed. On December 23, 2025, the docket reflects **"Request for Citation $8.00,"** **"Request for Notice $8.00,"** **"Citation,"** and **"Notice."** However, issuance of a citation is not service of a

citation. A citation must be: (a) delivered to a process server or constable; (b) personally served on the party; and (c) return of service filed proving delivery. As of the date of this Petition, no return of service has been filed, and Plaintiff has not been personally served with any citation, notice, or other document relating to the February 10, 2026 setting.

164. **The February 10, 2026 setting repeats the exact pattern used to conduct the void November 7, 2025 proceeding:**

| Element | November 7, 2025 | February 10, 2026 |
|---|---|---|
| Valid underlying order | No – August 29 "order" never filed by Clerk | No – Same void order |
| TRCP 21a service | No – Coordinator "Service Only" email | No – Paralegal "correspondence" |
| TRCP 245 notice (45 days) | No | No – Citation issued but never served; no return of service |
| Personal service | No | No |
| Return of service filed | No | No |
| Assignment order for visiting judge | No | Unknown |
| Plaintiff's motion correctly set | No – Docket said "Enforcement" | N/A – Enforcement motion |
| Final judgment to enforce | No – Interlocutory | No – Still interlocutory |

## Z. The Ongoing Deprivation of Federal Rights

165.   The pattern from April 2025 through February 2026 demonstrates a continuous, coordinated scheme to deprive Plaintiff of constitutionally protected rights:

**Procedural Due Process**: Plaintiff has been subjected to proceedings without notice, without service, without opportunity to be heard, and without a lawfully assigned judicial officer—in direct violation of the **Fourteenth Amendment** and *Mathews v. Eldridge,* 424 U.S. 319 (1976).

   a.   **Access to Courts**: Plaintiff has filed over 70 verified motions, objections, and requests for hearing. None have been set for hearing. None have been ruled upon with findings. Meanwhile, Defendants Hosseiny-Tovar and Gracey obtain hearing dates within days of request, and their proposed orders are signed without notice to Plaintiff.

   b.   **Equal Protection**: Defendant Janway responds to communications from Defendants Hosseiny-Tovar and Gracey immediately and coordinates scheduling at their request. Plaintiff's 67+ documented communications to the Court Coordinator have been systematically ignored. This selective access to the judicial process based on pro se status constitutes discrimination in violation of the **Equal Protection Clause.**

   c.   **Conspiracy**: The email chains between Defendants Janway, Hosseiny-Tovar, Basinger, and Gracey demonstrate coordinated action to schedule proceedings without valid service, conduct hearings without proper notice, enter orders drafted by opposing counsel, and repeat this process despite documented objections.

166.  The continuing nature of this conduct is from the void August 29, 2025 *"order,"* through the fabricated November 7, 2025 *"hearing,"* to the scheduled February 10, 2026 proceeding demonstrates that Defendants' violations are not isolated incidents but rather a persistent pattern of constitutional deprivation carried out under color of state law.

167.  Absent injunctive relief from this Court, Defendants will continue to conduct void proceedings, enter fabricated orders, and impose sanctions against Plaintiff for failing to appear at hearings for which he was never served while simultaneously denying him any opportunity to be heard on his own motions.

## VIII. STATE ACTION AND COLOR OF LAW

169. **Defendants Thompson and Janway are state actors. Thompson is an elected state judicial officer. Janway is a state employee exercising governmental authority. Their acts are attributable to the State of Texas.**

170. Private Defendants Basinger, Hosseiny-Tovar, Gracey, Goranson, Bain, Ausley, PLLC, q and Clement acted under "*color of law*" through joint participation with state actors.

171. Defendant Janway's April 17, 2025, email demonstrates joint action: a state official (Janway) refused to perform his ministerial duty based on a private party's (Basinger's) false statements. **This coordinated conduct deprived Plaintiff of his constitutional right to access the courts.** The joint action between state and private actors is demonstrated by extensive documented communications. On April 17, 2025, Janway emailed Plaintiff stating, *"We are not able to set a hearing for you. Mr. Basinger stated he is not the attorney of record and that service was not proper."* This email proves that a state official refused to perform his ministerial duty solely based on a private party's instructions. **Plaintiff submitted over fifty emails to Janway, including certified hearing requests, judicial letters, and four formal Motions for Status Conference. Not a single response was ever received. Meanwhile, opposing counsel's informal requests were always honored.** On August 25, 2025, Janway emailed Hosseiny-Tovar offering scheduling dates: *"I have the following dates open next week. Let me know what works for you,"* demonstrating coordinated preferential access. On November 12, 2025, after the **void** November 7 proceeding, opposing counsel emailed Janway directly requesting future enforcement hearing dates, demonstrating the ongoing selective communication channel. Court access was effectively restricted to one party—an unauthorized party—despite verified objections and **Rule 12** challenge. This

selective gatekeeping, where state officials granted access only to the unauthorized party while ignoring the *pro se* litigant's certified communications, establishes joint action under *Dennis v. Sparks* and *Lugar v. Edmondson Oil Co.*

172.    Under *Dennis v. Sparks,* 449 U.S. 24 (1980), private parties who are "*jointly engaged with state officials*" in constitutional deprivations act under "*color of law*" and are subject to § 1983 liability.

173.    Under *Lugar v. Edmondson Oil Co.,* 457 U.S. 922 (1982), state action exists when: (1) the deprivation is caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State; and (2) the party charged with the deprivation may be fairly said to be a state actor.

174.    Here: (1) the deprivation was caused by the misuse of the state judicial process, a privilege created by the State; and (2) the Private Defendants are fairly characterized as state actors through their joint action with Thompson and Janway. Texas courts have applied the *Lugar* state-action test to find private parties liable under § 1983 when they use state procedures to deprive others of constitutional rights. In *T.L. v. Cook Children's Medical Center*, 607 S.W.3d 9, 76 (Tex. App. 2020), the court held that a private entity's use of a statutory process constituted *"state action"* within the meaning of § 1983 because the private entity utilized state-created procedures to affect the deprivation. Here, the Private Defendants similarly utilized state judicial processes, filing pleadings, obtaining orders, coordinating with court staff, and manipulating docket entries to deprive Plaintiff of his constitutional rights. The ongoing procedural alignment and coordinated decision-making between Janway and the Private Defendants demonstrate a relationship of "pervasive entwinement," rendering the private parties state actors for § 1983 liability.

175. Alternative theories of state action also apply:

   a. **Public Function Doctrine:** The Private Defendants exercised powers traditionally exclusively reserved to the State (filing court documents, participating in judicial proceedings);

   b. **Entwinement Doctrine:** The Private Defendants were pervasively intertwined with state actors (coordinated communications with court staff, selective access to court processes); and

   c. **Nexus Test:** There is a sufficiently close nexus between the State and the Private Defendants' conduct such that the conduct may be reasonably attributed to the State.

   d. *West v. Atkins* **Test:** State action exists when a private party performs a traditional, exclusive public function. *West v. Atkins*, 487 U.S. 42 (1988). Here, the Private Defendants utilized and manipulated state judicial processes, a function exclusively under the State's control.

   e. *Brentwood Academy* **Entwinement:** Pervasive entwinement between the State and private actors establishes state action. *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288 (2001). The coordinated communications between Private Defendants and court staff, and the preferential treatment afforded to Private Defendants, demonstrate pervasive entwinement.

## IX. MUNICIPAL LIABILITY UNDER MONELL

176.    Collin County, Texas, is subject to municipal liability under **42 U.S.C. § 1983** pursuant to *Monell v. Department of Social Services,* 436 U.S. 658 (1978).

177.    Under *Monell,* a municipality may be held liable under **§ 1983** when the alleged constitutional deprivation is caused by: (1) an official policy; (2) a widespread custom or practice; (3) a decision by a final policymaker; or (4) a failure to train amounting to deliberate indifference.

178.    To establish municipal liability under **§ 1983,** Plaintiff must identify: (1) an official policy or custom; (2) of which a policymaker can be charged with actual or constructive knowledge; and (3) a constitutional violation whose "moving force" is that policy or custom. See *Matthews v. City of W. Point,* 863 F.Supp.2d 572, 588 (N.D. Miss. 2012).

179.    Collin County is liable under the following theories:

### A. Official Policy Applied Discriminatorily

180.    Collin County maintains an official *"neutrality"* policy for court coordinators, requiring them to treat all litigants equally. Defendant Janway violated this policy by providing preferential treatment to attorneys (scheduling hearings, responding to communications) while refusing to give any assistance to Plaintiff. The discriminatory application of an otherwise neutral policy was the moving force behind Plaintiff's constitutional injuries.

### B. Final Policymaker Ratification

181.    Under **Texas Government Code § 74.093,** Defendant Thompson, as presiding judge of the 416th District Court, possesses final policymaking authority for court administration in her courtroom. Thompson's deliberate failure to address documented constitutional violations

despite actual knowledge constitutes ratification of those violations. See *Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986).

### C. Failure to Train

182.  The County failed to train court coordinators on the equal treatment of *pro se* litigants. This failure reflects deliberate indifference to the constitutional rights of *pro se* litigants who interact with court staff. See *City of Canton v. Harris,* 489 U.S. 378 (1989).

183.  The need for training on equal treatment of *pro se* litigants is so evident that the failure to provide such training can fairly be said to represent official policy. The consequences of this failure, discriminatory denial of access to the process, are highly predictable.

### D. Widespread Custom or Practice

184.  Collin County has a widespread custom or practice of treating *pro se* litigants less favorably than represented parties. This custom is evidenced by the conduct in this case: Relator submitted over fifty emails to Defendant Janway, including certified hearing requests, judicial letters, and four formal Motions for Status Conference; not a single response was ever received. Meanwhile, opposing counsel's informal requests were always honored. Janway's April 17, 2025, email demonstrates an established practice of deferring to attorneys over pro se parties. He refused to schedule Plaintiff's hearing because ***"Mr. Basinger stated he is not the attorney of record,"*** accepting a private attorney's word over the plain requirements of **TRCP 10** without any independent verification. **Defendant Janway ignored more than sixty-seven documented communications from Plaintiff requesting hearings while consistently responding to and accommodating requests from opposing counsel.** This pattern of selective response demonstrates that Janway's conduct was not negligent but

deliberately designed to exclude Plaintiff from equal procedural access. Thompson's failure to take any corrective action despite Plaintiff's multiple documented complaints, including formal judicial letters, indicates institutional tolerance of this discriminatory treatment. This custom, while not officially adopted, is so common and well-settled as to constitute county policy.

## X. CLAIMS FOR RELIEF

### COUNT I: DENIAL OF PROCEDURAL DUE PROCESS

*(Fourteenth Amendment — Against All Defendants)*

185.  Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

186.  The **Fourteenth Amendment to the United States Constitution** provides that no State shall ***"deprive any person of life, liberty, or property, without due process of law."*** U.S. Const. amend. XIV, § 1.

187.  To state a procedural due process claim, Plaintiff must establish: (1) that he possessed a protected property or liberty interest to which due process protection applies; and (2) that he was not afforded an appropriate level of process. See *Caldwell v. Univ. of N.M. Bd. of Regents,* 2023 WL __ (D.N.M. 2023); *Mathews v. Eldridge,* 424 U.S. 319 (1976). Texas courts have held that statutory entitlements create constitutionally protected property interests. In *Grounds v. Tolar Independent School District*, 856 S.W.2d 417, 418 (Tex. 1993), the Texas Supreme Court held that "a constitutionally protected property interest is 'an individual entitlement grounded in state law, which cannot be removed except for cause." (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982)). The Court emphasized that ***"some substantive limit on the State's discretion is an essential characteristic of a property interest warranting constitutional protection."*** Here, Plaintiff's rights under **Texas Family Code §§ 157.268** and **158.506** to seek termination or modification of child support obligations constitute an entitlement that the State cannot deny arbitrarily, but must provide process.

188.  As to the first element, Plaintiff has protected property interests, including:

a.  The right to seek termination of child support obligations under **Texas Family Code §§ 157.268 and 158.506;**

b.  The right to have his motions heard and ruled upon;

c.  The right to access judicial remedies available under **Texas law;** and

d.  The right to participate in judicial proceedings affecting his legal obligations.

e.  To determine what process is due, courts apply the *Mathews v. Eldridge* balancing test, considering: (1) the private interest affected; (2) the risk of erroneous deprivation given the procedures used and the value of additional safeguards; and (3) the government's interest. Here:

f.  Plaintiff's private interest in terminating child support obligations is substantial;

g.  The complete denial of any hearing creates maximum risk of erroneous deprivation, the risk could not be higher; and

h.  The government has no legitimate interest in denying all process to a litigant while providing process to his adversary.

189.  Due process *"is flexible and calls for such procedural protections as the particular situation demands."* Caldwell, supra. At a minimum, **due process requires notice and opportunity to be heard.** See *Logan v. Zimmerman Brush Co.,* 455 U.S. 422 (1982). Applying these elements to the facts alleged herein: As to the first element, Plaintiff possessed protected property interests in seeking termination of child support obligations, having his motions heard and ruled upon, and accessing judicial remedies available under Texas law.

190.  As to the second element, Defendants denied Plaintiff any process whatsoever. Basinger made four false statements to Janway in April 2025, denying his attorney-of-record status; each statement contradicted by his firm's own August 5, 2025, admission. Janway relied on

those false statements to refuse to schedule any of Plaintiff's hearings, while ignoring more than 67 documented communications from Plaintiff and consistently responding to opposing counsel. Thompson failed to rule on any of Plaintiff's eighteen dispositive motions despite multiple formal judicial letters documenting constitutional violations. The August 29, 2025, order denied all pending motions without hearing, notice, or opportunity to respond, and was never properly filed or transmitted by Janway marked **"Service Only."** The November 7, 2025 proceeding was conducted before an unauthorized judge who lacked any assignment order while the assigned judge presided over other cases in the same courthouse. Each act denied Plaintiff notice, opportunity to be heard, or both.

191. Defendants deprived Plaintiff of procedural due process by:

    a. Refusing to rule on any of Plaintiff's 70+ verified filings;

    b. Refusing to schedule any hearings on Plaintiff's motions;

    c. Permitting unauthorized counsel to participate while denying Plaintiff access;

    d. Entering trial-by-submission rulings without proper motion, notice, or service;

    e. Conducting proceedings before a judge without jurisdiction;

    f. Creating false docket entries; and

    g. Backdating court orders.

192. The August 29, 2025, submission ruling violated **Texas Rule of Civil Procedure 245** (requiring reasonable notice of trial settings). Under *Peralta v. Heights Medical Center*, 485 U.S. 80 (1988), judgments entered without notice or opportunity to be heard are void. ***"The touchstone of procedural due process is the fundamental requirement that an individual be given the opportunity to be heard in a meaningful manner."*** *Mudge v. Macomb County*, 580 N.W.2d 845, 853 (Mich. 1998) (citing *Howard v. Grinage*, 82 F.3d 1343 (6th Cir. 1996)). "*At*

*a minimum, deprivation of life, liberty or property by adjudication must be preceded by notice and opportunity for hearing appropriate to the nature of the case."* Id. (citing *Boddie v. Connecticut*, 401 U.S. 371 (1971)). Moreover, "[i]n situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy." *Zinermon v. Burch*, 494 U.S. 113, 132 (1990). Here, predeprivation hearings were not only feasible but repeatedly requested by Plaintiff— and systematically denied.

193.  Defendants' conduct was intentional, willful, and in reckless disregard of Plaintiff's constitutional rights. Plaintiff is entitled to compensatory and punitive damages.

## COUNT II: DENIAL OF ACCESS TO COURTS

### *(First and Fourteenth Amendments — Against All Defendants)*

195. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

196. Access to courts is a fundamental constitutional right. See *Bounds v. Smith*, 430 U.S. 817 (1977); *Christopher v. Harbury*, 536 U.S. 403 (2002). This right is founded in the Due Process Clause and "***assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights.***" *Jones v. Lumpkin*, 2024 WL __ (S.D. Tex. 2024).

197. Denial-of-access claims take two forms: (1) ***"forward-looking"*** claims alleging systematic official action frustrating a plaintiff in preparing and filing suits; and (2) ***"backward-looking"*** claims alleging official action caused the loss of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some order of relief. See *Waller v. Hanlon*, 922 F.3d 590, 601 (5th Cir. 2019); *Christopher v. Harbury*, 536 U.S. at 413-14.

198. The Supreme Court has divided access-to-courts claims into two categories: ***"forward-looking claims, which involve official action that frustrates a plaintiff's ability to bring a suit at the present time, and backward-looking claims, which arise when plaintiffs allege that a specific claim cannot be tried because past official action causes the loss or inadequate settlement of a meritorious claim."*** *A.M. v. N.M. Dep't of Health*, 148 F.Supp.3d 1232, 1281 (D.N.M. 2015) (citing *Christopher v. Harbury*, 536 U.S. 403 (2002)).

199. **This is a backward-looking claim.** State officials obstructed Plaintiff's efforts to obtain judicial remedies for his nonfrivolous claims, causing actual injury.

200. **To maintain a backward-looking access-to-courts claim,** Plaintiff must identify: (1) a nonfrivolous underlying claim; (2) an official act that frustrated the litigation of that claim;

and (3) a remedy that is not otherwise available in another suit that may yet be brought. See *Purdy v. Thomas,* 2023 WL __ (N.D. Tex. 2023); *Waller,* 922 F.3d at 601. Applying these elements to the facts alleged herein:

a. As to the first element, Plaintiff's Motion to Terminate Child Support was nonfrivolous; it was filed correctly, and properly served on the attorney of record under **TRCP 10,** and raised legitimate legal issues under the **Texas Family Code.**

b. As to the second element, the official acts frustrating Plaintiff's litigation include: Janway's refusal to schedule any hearings based on Basinger's false statements while ignoring Plaintiff's fifty-plus emails, certified hearing requests, and four formal Motions for Status Conference; Thompson's failure to rule on any of Plaintiff's eighteen dispositive motions; the August 29, 2025 order denying all motions without hearing or proper filing; and the November 7, 2025 proceeding conducted before an unauthorized judge whose orders are void ab initio.

c. As to the third element, this **Section 1983** action is the only available remedy because Plaintiff exhausted all state appellate remedies, the Fifth Court of Appeals denied mandamus without opinion, mandamus **"denied"** by the Texas Supreme Court without opinion, and the Motion for Rehearing was denied without opinion. No Texas court engaged with Plaintiff's constitutional claims.

e. As to the first element, Plaintiff's underlying claim, a Motion to Terminate Child Support under **Texas Family Code,** was nonfrivolous. The motion was properly filed and served on the attorney of record, and it raised legitimate legal issues.

201. The Fifth Circuit has held that *"an inmate's allegation that he merely lost an opportunity to seek a particular type of relief is enough to show an actual injury for purposes of stating a backward-looking claim."* Purdy v. Thomas, supra (citing *Jackson v. Procunier,* 789 F.2d 307 (5th Cir. 1986)). Here, **Plaintiff lost his opportunity to obtain a hearing and ruling on his motion that constitutes actual injury.**

202. As to the second element, the **official acts frustrating Plaintiff's litigation** include:

    a. Janway's refusal to schedule any hearings based on Basinger's false statements;

    b. Thompson's failure to rule on any of Plaintiff's 70+ motions;

    c. The coordinated acceptance of filings from unauthorized counsel while ignoring the Plaintiff;

    d. The August 29, 2025 order denying all pending motions without a hearing; and

    e. The November 7, 2025, proceeding was conducted without jurisdiction.

203. As to the third element, this **§ 1983** action is the only available remedy. **State appellate remedies have been exhausted, yet no court has engaged with Plaintiff's constitutional claims.**

204. Defendants' **coordinated refusal to provide Plaintiff any access** to the judicial process foreclosed his nonfrivolous claims. See *Lewis v. Casey,* 518 U.S. 343 (1996); *Tucker v. City of Richmond,* 388 F.Supp.3d 561 (E.D. Va. 2019); *Ryland v. Shapiro,* 708 F.2d 967 (5th Cir. 1983).

205.  **Defendants' conduct was intentional, willful, and in reckless disregard of Plaintiff's constitutional rights.** Plaintiff is entitled to compensatory and punitive damages.

## COUNT III: EQUAL PROTECTION VIOLATION

### *(Fourteenth Amendment — Against All Defendants)*

207. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

   a. The **Equal Protection Clause of the Fourteenth Amendment** provides that no State shall *"deny to any person within its jurisdiction the equal protection of the laws."* **U.S. Const. amend. XIV, § 1.**

   b. The mandate of the **Equal Protection Clause** is *"that all persons similarly situated should be treated alike."* Hope For Families & Cmty. Serv. Inc. v. Warren, 721 F.Supp.2d 1079, 1134 (M.D. Ala. 2010) (quoting *Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432 (1985)).

   c. To state a *"class-of-one"* equal protection claim, Plaintiff must establish that the defendant *"intentionally, and without rational basis, treated the plaintiff differently from others similarly situated."* N GROUP LLC v. Hawai'i County Liquor Com'n, 681 F.Supp.2d 1209, 1229 (D. Haw. 2009); *Village of Willowbrook v. Olech,* 528 U.S. 562 (2000).

208. **Plaintiff asserts a class-of-one equal protection claim.** He was intentionally treated differently from similarly situated litigants **(opposing counsel and represented parties) without any rational basis.** Applying these elements to the specific facts alleged herein: Plaintiff and opposing counsel were similarly situated—both were parties to the same civil proceeding in the 416th District Court. The intentional differential treatment is established by direct comparison:

209. *Plaintiff*: Filed over seventy verified motions; received no hearings, no rulings, no acknowledgment. Submitted sixty-seven-plus documented communications to Janway; received not a single response. Filed four formal Motions for Status Conference; all ignored. **Texas Rules of Civil Procedure 21a, 21b, and 245** were strictly enforced against Plaintiff.

210. *Opposing Counsel*: Was never properly designated under **TRCP 8,** her own August 5, 2025 verified filing admitted "no **TRCP 10** withdrawal or **TRCP 8** designation existed." Yet received preferential scheduling access, Janway emailed Hosseiny-Tovar on August 25, 2025, offering dates: "I have the following dates open next week." Informal requests were always honored. Filings lacking proper certificates of service were accepted. The rules were waived entirely in favor of the opposing party. **The result was a record of one-sided judicial access: Respondent was afforded rulings, court action, and hearing dates, while every one of Plaintiff's motions was ignored.** The court's machinery was *"weaponized under color of law"* by granting procedural power to a non-attorney of record while denying Plaintiff equal access. There was no rational basis for this discrimination.

211. The Fifth Circuit has held that *"differential treatment by court officials"* in processing legal filings can constitute an equal protection violation. *Jackson v. Procunier,* 789 F.2d 307 (5th Cir. 1986).

212. Between April and November 2025, Plaintiff and opposing counsel were parties to the same civil proceeding. Yet their access to the judicial process was not equal: Plaintiff filed over 70 verified motions, **none of which received acknowledgment or ruling.**

   a. Opposing counsel, who was never designated under **TRCP 8, received informal access to the court coordinator;**

   b. **Opposing counsel received hearing settings granted without motion or service;**

    c.  **Submission dockets were inserted for opposing counsel's benefit without proper notice;**

    d.  **No sanctions were imposed for the unauthorized Discovery Control Plan;** and

    e.  **The court continued to recognize Hosseiny-Tovar as counsel even after the August 5, 2025 admission that no designation had ever occurred.**

213.  **This disparate treatment was intentional.** Defendants consciously chose to provide process to one party while denying it to another. There was no rational basis for this discrimination. See *Lefebure v. Boeker,* 390 F.Supp.3d 729, 748 (M.D. La. 2019). The discriminatory application of procedural rules was not isolated but systematic. Collin County maintains an official *"neutrality"* policy for court coordinators that requires equal treatment of all litigants. Defendant Janway violated this policy by providing preferential treatment to attorneys scheduling hearings, responding to communications, and accepting improperly served filings while refusing all assistance to Plaintiff. This discriminatory application of an otherwise neutral policy was the moving force behind Plaintiff's constitutional injuries.

214.  **Defendants' conduct was intentional, willful, and in reckless disregard of Plaintiff's constitutional rights.** Plaintiff is entitled to compensatory and punitive damages.

## COUNT IV: CONSPIRACY TO DEPRIVE CIVIL RIGHTS

### *(42 U.S.C. § 1983 and § 1985(3) — Against All Defendants)*

216. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

   a. A conspiracy to deprive civil rights exists when two or more persons agree to deprive a plaintiff of constitutional rights and take some action in furtherance of that agreement. See *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970).

   b. To state a claim under **42 U.S.C. § 1985(3),** Plaintiff must allege: (1) the existence of a conspiracy; (2) an intent to deny equal protection under the laws or equal privileges and immunities of the laws; (3) an injury or deprivation of federally protected rights; and (4) an overt act in furtherance of the conspiracy. See *Tenorio v. San Miguel Cnty. Det. Ctr.,* 2017 WL __ (D.N.M. 2017).

   c. As to the first element (existence of conspiracy), **Defendants entered into a conspiracy to deprive Plaintiff of his constitutional rights.** The conspiracy was formed no later than April 2025 and continued through at least November 2025. The existence of the conspiracy is evidenced by:

      1) **Defendant Basinger's false statements to Defendant Janway regarding his attorney status;**

      2) **Defendant Janway's reliance on those false statements to deny Plaintiff's hearings;**

      3) **The coordinated timing of Defendant Hosseiny-Tovar's unauthorized appearance with Defendant Basinger's false denials of representation;**

      4) **Defendant Hosseiny-Tovar's fabrication of the Discovery Control Plan;**

5) **Defendant Hosseiny-Tovar's continued filing in violation** of the **TRCP 12** mandatory stay;

6) **Defendant Hosseiny-Tovar's false statements** about **Rule 12** rulings on November 5, 2025;

7) **Defendant Gracey's filing of improper proposed orders** while Plaintiff was being denied access;

8) **Defendant Clement's submission of a false declaration to obtain substituted service;**

9) **Defendant Janway's transmission of unfiled documents to facilitate the void November 7 proceeding;**

10) **Defendant Thompson's failure to address documented violations despite notice;** and

11) **The consistent pattern of preferential treatment for represented parties and exclusion of the *pro se* Plaintiff.**

217. **The agreement need not be formal or express; it may be inferred from the coordinated nature of the conduct.** The temporal proximity and logical coordination of Defendants' actions support an inference of agreement. The interdependent and sequential nature of Defendants' conduct demonstrates an agreement rather than mere parallel action.

218. Basinger's four false statements to Janway in April 2025 enabled Janway to refuse to schedule Plaintiff's hearings.

219. Janway's refusals, ignoring Plaintiff's sixty-seven-plus documented communications while consistently responding to opposing counsel, created the procedural vacuum that Hosseiny-

Tovar exploited through her unauthorized April 28 Entry of Appearance and continued filings in violation of the **TRCP 12** stay.

220. On August 5, 2025, Hosseiny-Tovar's own verified filing admitted that "no **TRCP 10** withdrawal or **TRCP 8** designation existed," yet the court continued to recognize her. That same day, Gracey filed four proposed orders between 4:02 PM and 4:09 PM without any accompanying motion coordinated with the court's willingness to accept those filings *ex parte.*

221. On August 25, 2025, Hosseiny-Tovar transmitted a fabricated "Discovery Control Plan" styled as a court order that was never filed. Thompson's deliberate failure to rule on any of Plaintiff's motions despite documented complaints ratified each preceding step.

222. The November 7, 2025, fabricated proceeding conducted before an unauthorized judge, not on the official docket, based on an unfiled *"order,"* was the culmination of this coordinated scheme. Each Defendant's act was necessary for, and dependent upon, the acts of the others. This sequential interdependence distinguishes this case from mere parallel conduct and establishes an agreement to conspire.

223. As to the second element (intent to deny equal protection), Defendants intentionally discriminated against Plaintiff based on his *pro se* status, denying him equal access to the judicial process while providing such access to represented parties.

224. As to the third element (injury or deprivation), **Plaintiff suffered actual injury to his constitutional rights to due process, access to courts, and equal protection,** as described above.

225. As to the fourth element (overt acts), overt acts in furtherance of the conspiracy include each of the specific acts alleged herein, including Basinger's false statements, Janway's

refusals, Hosseiny-Tovar's unauthorized filings and fabrications, Gracey's *ex parte* filings, Clement's false declaration, and Thompson's ratification through inaction.

226.  As a direct and proximate result of Defendants' conspiracy, **Plaintiff suffered actual injury to his constitutional rights.** Plaintiff is entitled to compensatory and punitive damages.

## COUNT V: MUNICIPAL LIABILITY (MONELL)

### *(42 U.S.C. § 1983 — Against Defendant Collin County, Texas)*

**227.** Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

a. Under *Monell v. Department of Social Services,* 436 U.S. 658 (1978), a municipality may be held liable under **§ 1983** when a constitutional violation is caused by: (1) an official policy; (2) a widespread custom or practice; (3) a decision by a final policymaker; or (4) a failure to train amounting to deliberate indifference.

b. A municipality cannot be held liable solely on a respondeat superior theory. *Monell,* 436 U.S. at 694. Instead, Plaintiff must show that the municipal policy or custom was the ***"moving force"*** behind the constitutional violation. *Matthews v. City of W. Point,* 863 F.Supp.2d 572, 588 (N.D. Miss. 2012).

**228.** Collin County is liable under *Monell* for the reasons outlined in **Section IX** above, including:

a. The **discriminatory application of the County's official neutrality policy;**

b. Defendant Thompson's **ratification of constitutional violations as final policymaker** under **Texas Government Code § 74.093;**

c. The County's failure to train court coordinators on equal treatment of ***pro se*** litigants, constituting deliberate indifference under *City of Canton v. Harris,* 489 U.S. 378 (1989); and

d. The County's widespread custom or practice of treating ***pro se*** litigants less favorably than represented parties. The state's corrective process has proven systemically defective and inadequate. The joint entwinement between court staff and private actors

is demonstrated by Janway's coordination with Hosseiny-Tovar, his reliance on Basinger's false statements, and his complete blackout of Plaintiff's communications, and meets the constitutional threshold for imposing **§ 1983** liability on all joint participants, including the County. Federal redress under **§ 1983** is necessitated by the systemic constitutional violations and abuse of process that Texas state courts failed to correct despite multiple mandamus petitions and appellate filings.

229. The County's policies, customs, practices, and failures to train were the moving force behind the deprivation of Plaintiff's constitutional rights.

## XI. INJURIES AND DAMAGES

231.  As a direct and proximate result of the actions and omissions of Defendants, state officials and private actors operating under *"color of law,"* Plaintiff suffered the following legally cognizable injuries:

### A. Procedural and Legal Injuries

232.  **Complete exclusion from the judicial process** in the 416th District Court from April through November 2025, despite filing over seventy (70) verified pleadings.

233.  **No rulings on dispositive filings**, including Motion to Determine Attorney of Record, **Rule 12** Challenge, Verified Motion to Quash Substitute Service, Motion to Strike Unauthorized Appearance, Motion to Preserve Metadata, and Verified Objections to fabricated submission settings. Collin County, through the 416th District Court, has promulgated an official written policy governing hearings, submissions, and the signing of orders. The *"416th District Court Policies"* document (revised June 3, 2025) constitutes official county policy for purposes of Monell liability. This policy provides, in relevant part: *"To set a hearing, please email the court coordinator... You will be provided with the Court's available dates... The coordinator does not add the case to the court calendar until a completed notice of hearing is submitted."*

234.  *"Dispositive Motions – All potentially dispositive civil/family motions... must be filed AND HEARD at least 30 days before trial. The purpose of the hearing date in a summary judgment is to set the deadlines for the response. Unless otherwise notified by the court, the parties are not to attend on the hearing date; the case will be considered by submission."*

235. *"Signing Temporary Orders... Temporary Orders may be signed by the Court without the necessity of a hearing under the following circumstances: (1) The order is accompanied by a letter that notifies the opposing counsel/party of their right to object to the order within ten days of the date that the letter was mailed; (2) the submitting attorney certifies that the order and letter were sent to the opposing counsel... and (3) no objection is filed."* Defendants violated Collin County's own official policy in Plaintiff's case. Specifically:

    a. No notice of hearing or submission was ever served on Plaintiff; No hearing date was ever set through the court coordinator;

    b. No completed notice of hearing was ever filed with the clerk; The August 29, 2025 order denying eighteen (18) pending motions was signed without any notice to Plaintiff of a submission date;

    c. No letter was sent notifying Plaintiff of his right to object within ten days;

    d. No certification was filed showing proper notice to Plaintiff, and the case was never placed on the court calendar through appropriate channels. Yet, an order was entered as though a valid submission had occurred.

236. Beyond Defendants' failure to follow their own policy, the 416th District Court's *"submission"* policy is itself constitutionally defective because it lacks adequate safeguards to ensure compliance with the **Texas Rules of Civil Procedure** and the **Due Process Clause of the Fourteenth Amendment.** Specifically:

    *a.* **Texas Rule of Civil Procedure 166a(c)** requires that a motion for summary judgment and any supporting affidavits *"shall be filed and served at least twenty-*

*one days before the time specified for hearing,"* and that the adverse party may file opposing affidavits or written response *"not later than seven days prior to the day of hearing."*

b. **Texas Rule of Civil Procedure 21(b)** requires that notice of any hearing *"must be served upon all other parties not less than three days before the time specified for the hearing."*

c. The Texas Supreme Court has held that *"notice of hearing or submission of a summary judgment motion... is required"* because *"[t]he hearing date determines the time for response to the motion; without notice of hearing, the respondent cannot know when the response is due."* Martin v. Martin, Martin & Richards, Inc., 989 S.W.2d 357, 359 (Tex. 1998).

d. Texas courts have recognized that *"[l]ack of notice to the nonmovant of the summary judgment hearing violates the nonmovant's due process rights."* Campos v. Cintas Corp., No. 13-04-539-CV, 2005 WL 1812600, at *2 (Tex. App.—Corpus Christi Aug. 4, 2005, no pet.).

e. The 416th District Court's policy permits orders to be signed *"by submission"* without any mechanism to verify that proper notice was provided to the opposing party. The policy contains no safeguard requiring proof of service, no verification that the non-movant received notice of the submission date, and no procedure to confirm the non-movant's opportunity to respond before an order is entered.

237. This policy deficiency is not a mere procedural technicality—it is a structural flaw that enabled the deprivation of Plaintiff's constitutional rights. The policy's lack of verification procedures allowed Defendants to obtain an order denying eighteen (18) motions without

Plaintiff ever receiving notice that a submission was pending, without being informed of a deadline to respond, and without an opportunity to be heard. Collin County's official policy, both as written and as applied, directly caused the deprivation of Plaintiff's constitutional rights. Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and *City of Canton v. Harris*, 489 U.S. 378 (1990), a municipality may be held liable under § 1983 when:

   a.  An official policy or custom causes a constitutional violation; or

   b.  A policy is facially constitutional but lacks adequate safeguards, and this deficiency demonstrates deliberate indifference to constitutional rights. Here, both theories apply. Defendants violated Collin County's own policy, demonstrating a custom of non-enforcement when dealing with pro se litigants. Additionally, the policy itself lacks constitutionally required notice verification procedures, and this structural deficiency enabled—indeed, guaranteed—that Plaintiff would be deprived of due process.

238.  August 29, 2025, **blanket denial of eighteen (18) motions,** including jurisdictional and fraud objections, without hearing, notice, or opportunity to be heard.

239.  **State appellate denials without opinion,** confirming structural unavailability of state remedy.

240.  **Void orders that constitute continuing injury until vacated.**

## B. Financial Harm

241. **Significant financial depletion** from nine months of futile litigation driven by a simulated process.

242. Continued aggressive enforcement actions, including threats of incarceration, were pursued in violation of proper procedure, and the substantial burden imposed by Defendants' vexatious litigation tactics, including manipulative and fraudulent filings that forced Plaintiff to expend resources defending against simulated process while being denied any legitimate hearing.

243. Business interruptions, lost consulting engagements, and reputational harm.

## C. Emotional and Psychological Injury

244. Severe anxiety, insomnia, cognitive fatigue, and depressive symptoms caused by systemic denial of remedy.

245. Feelings of institutional betrayal and moral injury due to the State's refusal to enforce its own laws and ensure fairness.

246. These emotional and psychological injuries are the foreseeable result of an intentional, cumulative pattern of exclusion.

## D. Ongoing Risk and Continuing Harm

247. As of this filing, Plaintiff remains:

   a. Subject to enforcement actions (contempt) premised on void orders;

   b. Operating under an unconstitutional submission ruling, ignoring preserved objections, and

   c. At continuing risk of legal, financial, and reputational harm.

d.  Without federal intervention, Plaintiff faces an ongoing pattern of constitutional harm.

248.  These ongoing threats satisfy the irreparable harm requirement under **Federal Rule of Civil Procedure 65(b)** for injunctive and declaratory relief—each day of enforcement risk compounds constitutional harm that no later monetary award can repair.

## E. Proximate Cause

249.  Defendants' coordinated acts were the proximate cause of Plaintiff's constitutional injuries described herein, directly producing the loss of procedural rights, financial harm, and continuing deprivation of access to the courts. See *Hart v. O'Brien,* 127 F.3d 424 (5th Cir. 1997).

## XII. PRAYER FOR RELIEF

251.  WHEREFORE, Plaintiff Paul William Lonsford respectfully requests that this Court enter judgment in his favor and against Defendants, and award the following relief:

a. Compensatory damages against all Defendants, jointly and severally, in an amount to be determined at trial, for procedural exclusion, economic loss, reputational harm, and emotional distress;

b. Punitive damages against Defendants Thompson, Janway, Basinger, Hosseiny-Tovar, Gracey, Clement, and Goranson Bain Ausley, PLLC, for egregious misuse of state power under color of law, in an amount sufficient to punish and deter;

c. Nominal damages pursuant to *Uzuegbunam v. Preczewski,* 141 S. Ct. 792 (2021), ensuring live controversy regardless of other damages;

d. A declaratory judgment that Defendants violated Plaintiff's constitutional rights under the **First and Fourteenth Amendments,** including his rights to procedural due process, access to courts, and equal protection;

e. Injunctive relief requiring Collin County to implement training for court staff on equal treatment of pro se litigants and to revise its policies to ensure neutrality is applied equally;

f. Injunctive relief preventing enforcement of any order issued through fraudulent or simulated process, including the void August 29, 2025 order and any orders arising from the November 7, 2025 proceeding;

g. Injunctive relief preventing Defendants from conducting the February 10, 2026 proceeding or any future proceeding without valid service under **TRCP 21a** and **TRCP 245,** proper notice, and a lawfully assigned judicial officer.

h.  An order requiring preservation of all metadata and audit-trail evidence relevant to this case, including the complete CMS audit trail for all **"–AST"** docket entries;

i.  Reasonable attorney's fees and costs pursuant to **42 U.S.C. § 1988** (applicable even to *pro se* litigants for reasonable expenses);

j.  Pre-judgment interest at the maximum rate allowed by law;

k.  Post-judgment interest at the maximum rate allowed by law; and

l.  Such other and further relief as this Court deems just and proper.

## XIII. JURY DEMAND

252. Plaintiff hereby demands a trial by jury on all issues so triable pursuant to **Federal Rule of Civil Procedure 38** and the **Seventh Amendment to the United States Constitution.**

## XIV. EXHIBIT INDEX

**Pursuant to Federal Rule of Civil Procedure 10(c) and Local Rule CV-5(a)(6) of the United States District Court for the Eastern District of Texas**

Plaintiff Paul William Lonsford submits the following exhibits in support of his Verified Complaint Under 42 U.S.C. § 1983 for Declaratory, Injunctive, and Monetary Relief.

## EXHIBIT A

### Official Docket History, 416th District Court of Collin County, Texas

### Cause No. 416-52432-2012

*Referenced in: Complaint ¶¶ 44, 131, 135–148, 151, 154–156, 164*

### *Case Information*

- **Case Type:** Divorce with Children
- **Style:** In the Matter of the Marriage of Paul William Lonsford and Lacey Alexis Clement and in the Interest of Lexey Jadyn Lonsford, Dane Paul Lonsford
- **Judicial Officer:** Thompson, Andrea in 416th District Court
- **File Date:** 5/15/2012
- **Status:** Re-Opened

### *Parties*

- **Petitioner:** Lonsford, Paul William (Pro Se) - 820 Hawk Wood Ln., Prosper, TX 75078
- **Respondent:** Clement, Lacey Alexis - Attorney: Mona Hosseiny-Tovar (Bar #24096425), Goranson Bain Ausley, PLLC, 8350 North Central Expressway, Suite 1700, Dallas, TX 75206

### *Key Events (Selected chronologically, showing pattern of procedural irregularities)*

### *Initial Proceedings (2012):*

- 5/15/2012: Original Petition for Divorce filed (OCA $350.00)
- 12/18/2012: Final Decree of Divorce granted

### *First Modification Period (2015-2016):*

- 8/17/2015: Motion to Modify Parent-Child Relationship filed (REOPEN - OCA $80.00)
- 11/2/2016: Order on Motion to Modify entered

### *Second Modification Period (2021):*

- 6/21/2021: Petition to Modify Parent-Child Relationship filed (REOPEN - OCA $80.00)
- 12/9/2021: Agreed Order to Modify Parent Child Relationship entered

### *Current Enforcement Litigation (2025-2026):*

- 4/10/2025: Petitioner's Motion to Terminate Child Support filed
- 4/10/2025: Petitioner's Motion to Stay Enforcement filed
- 4/28/2025: Entry of Appearance & Notice of Designation of Lead Counsel filed
- 5/5/2025: Respondent's Motion for Enforcement of Child Support filed (REOPEN - OCA $80.00)
- 5/15/2025: Order to Appear on Motion for Enforcement issued
- 6/17/2025: Notice of Filing of Petition for Writ of Mandamus filed
- 6/30/2025: Notice of Court Proceeding: Hearing on Motion for Alternative Service
- 7/1/2025: Notice of Court Proceeding - Hearing on Motion for Protective Order
- 7/10/2025: Notice of Filing of Appendix with the Fifth Court of Appeals
- 7/17/2025: Notice Of Pending Mandamus and Emergency Stay in the Supreme Court of Texas
- 7/18/2025: Appeals - Mandamus (05-25-00739-CV - Denied)
- 7/18/2025: General Docket Entry - "Counsel for Mother appeared, hall called for Father 3x with no answer, hrg on Discovery PO reset to..."
- 7/24/2025: Protective Order - Discovery hearing; General Docket Entry - "Hearing reset to 8-7-25 by submission pending ruling from SCOTX on Mandamus"
- 8/5/2025: Notice of Intent to Assert Federal Claims Under 42 U.S.C. § 1983
- 8/7/2025: 9:00 AM Hearing (Cancelled: Other) - "SUBMISSION: Protective order hearing Motion to Compel Motion to Stay Enforcement Pending Resolution..."
- 8/22/2025: Appeals - Mandamus (Correspondence - Supreme Court of Texas)
- 8/26/2025: 8:30 AM Dismissal for Want of Prosecution (Cancelled: Other)
- 8/29/2025: 9:00 AM Hearing - "SUBMISSION: Protective order hearing Motion to Compel Motion to Stay Enforcement Pending Resolution..."
- 8/29/2025: Order - "Rulings on Motions Set for Submission on August 29, 2025"
- 9/11/2025: Discovery Control Plan and Scheduling Order - Bench Trial Discovery Control Plan and Scheduling Order - Level 2
- 10/10/2025: Appeals - Mandamus (Correspondence - Supreme Court of Texas)
- 11/3/2025: Multiple verified Rule 12 motions filed challenging attorney authority
- 11/5/2025: Petitioner's Verified Notice of Non-Appearance and Objection to Void Hearing Setting
- **11/7/2025: 9:00 AM Trial Before the Court (enforcement)**
- **11/7/2025: General Docket Entry - "case called, hallway called for petitioner, petitioner did not appear, hearing held, order signed. J..."**
- **11/7/2025: Order Denied**
- 11/12/2025: Mailed Judgment Letters
- 12/9/2025: Notice of Hearing and Order to Appear on Lacey Clement's Motion for Enforcement of Child Support
- 12/23/2025: Citation and Notice issued
- **2/10/2026: 9:00 AM Motion for Enforcement (scheduled)**

*Lonsford v. Thompson, et al. — Verified Complaint Under 42 U.S.C. § 1983*
90

## *Dispositions*

- 12/18/2012: Final Decree of Divorce
- 11/2/2016: Order on Motion to Modify
- 12/9/2021: Agreed Order to Modify Parent Child Relationship
- **11/7/2025: Order Denied**

## *Financial Summary*

- Attorney: $5.00 charged, $5.00 paid, $0.00 balance
- Petitioner: $528.00 charged, $528.00 paid, $0.00 balance
- Respondent: $483.00 charged, $483.00 paid, $0.00 balance

## EXHIBIT B

### Official Docket History, Fifth Court of Appeals, Dallas, Texas
### Case No. 05-25-00739-CV

*Referenced in: Complaint ¶¶ 27(b), 27(f), 44, 138(g), 203*

### *Case Information*

- **Date Filed:** 06/17/2025
- **Case Type:** Mandamus
- **Style:** In Re: Paul William Lonsford v. [Respondent: Hon. Andrea Thompson]
- **Orig Proc:** Yes
- **Pub Service:** West Publishing

### *Parties*

- **Relator:** Lonsford, Paul William (Self-represented: Paul William Lonsford)
- **Real Party in Interest:** Clement, Lacey Alexis (Representatives: Kyle G. Basinger, Mona Hosseiny-Tovar)

### *Trial Court Information*

- **Court:** 416th Judicial District Court
- **County:** Collin
- **Court Judge:** Honorable Andrea Thompson
- **Court Case:** 416-52432-2012
- **Reporter:** Destiny M. Moses

### *Appellate Briefs*

| Date | Event Type | Description | Document |
|---|---|---|---|
| 07/10/2025 | Appendix filed | | |
| 06/17/2025 | Petition for writ of mandamus filed | Relator | Writ Of Mandamus (PDF/911 KB), Notice (PDF/85 KB) |

## Case Events

| Date | Event Type | Disposition | Document |
|---|---|---|---|
| 07/17/2025 | Notice filed | | Relator Notice (PDF/290 KB) |
| **07/17/2025** | **Memorandum opinion issued** | **Motion or Writ Denied** | **Memorandum Opinion (PDF/99 KB), Notice (PDF/81 KB)** |
| **07/17/2025** | **Order entered** | **Motion or Writ Denied** | **Order Denying Relator's Petition for Writ of Mandamus and Emergency Motion (PDF/102 KB), Notice (PDF/81 KB)** |
| 07/17/2025 | Retention time case file will be retained | Destroy | |
| 07/15/2025 | Motion to expedite filed | | Relator Motion to Expedite (PDF/334 KB) |
| 07/14/2025 | Document filed | | Relator Supplement to Petition (PDF/2.10 MB) |
| 07/11/2025 | Response due | | |
| 07/10/2025 | Appendix filed | | |
| 07/03/2025 | Order entered | Otherwise Disposed | Order to Request Appendix (PDF/104 KB), Notice (PDF/80 KB) |
| 06/17/2025 | Submitted | | |
| 06/17/2025 | Motion to stay filed | | Relator Motion to Stay (PDF/344 KB) |
| 06/17/2025 | Petition for writ of mandamus filed | | Writ of Mandamus (PDF/911 KB), Notice (PDF/85 KB) |

## Calendars

| Set Date | Calendar Type | Reason Set |
|---|---|---|
| 07/17/2025 | Case Stored | Case stored |
| 07/17/2031 | Retention | Date civil case will be destroyed (6 yrs after mandate) |

## Court of Appeals Information

- **COA Case:** 05-25-00739-CV
- **Disposition:** Denied
- **Opinion Cite:** ___ SW3d ___, 07-17-25
- **COA District:** 5th Court of Appeals
- **COA Justice:** Honorable S. Craig Smith

## EXHIBIT C

### Official Docket History, Supreme Court of Texas
### Case No. 25-0621

*Referenced in: Complaint ¶¶ 27(c)–(e), 27(g), 44, 138(g), 203*

#### Case Information

- **Date Filed:** 07/17/2025
- **Case Type:** Petition for Writ of Mandamus
- **Style:** IN RE PAUL WILLIAM LONSFORD

#### Parties

- **Relator:** Lonsford, Paul William (Representative: Paul William Lonsford)
- **Real Party in Interest:** Clement, Lacey Alexis (Representatives: Kyle G. Basinger, Mona Hosseiny-Tovar)

### Appellate Briefs

| Date | Event Type | Description | Remarks | Document |
|---|---|---|---|---|
| 09/03/2025 | Motion for Rehearing | Refers to Petition for Writ of Mandamus | Motion for Rehearing filed on behalf of Paul William Lonsford | PDF/1.24 MB, Notice PDF/38 KB |
| 08/11/2025 | Supplemental Brief filed | Relator | Supplemental Brief filed on behalf of Paul William Lonsford | PDF/1.99 MB |
| 08/05/2025 | Supplemental Brief filed | Relator | Supplemental Brief filed on behalf of Paul William Lonsford | PDF/2.35 MB |
| 07/28/2025 | Supplemental Brief filed | Relator | Supplemental Brief filed on behalf of Paul William Lonsford | PDF/4.28 MB |
| 07/24/2025 | Supplemental Brief filed | Relator | Supplemental Brief filed on behalf of Paul William Lonsford | PDF/813 KB |

| Date | Event Type | Description | Remarks | Document |
|---|---|---|---|---|
| 07/20/2025 | Supplemental Brief filed | Relator | Supplemental Brief filed on behalf of Paul William Lonsford | PDF/513 KB |
| 07/17/2025 | Petition for Writ of Mandamus filed | Relator | Petition for Writ of Mandamus filed on behalf of Paul William Lonsford | PDF/3.24 MB, Notice PDF/38 KB |

### *Case Events*

| Date | Event Type | Disposition | Remarks | Document |
|---|---|---|---|---|
| **10/10/2025** | **Case Stored** | | e-stored | |
| **10/10/2025** | **Motion for Rehearing - Disposed** | **Denied** | | **Notice PDF/38 KB** |
| 09/09/2025 | Case forwarded to Court | | | |
| 09/03/2025 | Motion for Rehearing | | Motion for Rehearing filed on behalf of Paul William Lonsford | PDF/1.24 MB, Notice PDF/38 KB |
| **08/22/2025** | **Motion to Stay Disposed** | **Filing dismissed as moot** | **Relator's emergency motion for stay dismissed as moot** | **Notice PDF/33 KB** |
| **08/22/2025** | **Petition for Writ of Mandamus disposed** | **Denied** | | **Notice PDF/36 KB** |
| 08/11/2025 | Call received | | Call received from Petitioner | |
| 08/11/2025 | Supplemental Brief filed | | Supplemental Brief filed on behalf of Paul William Lonsford | PDF/1.99 MB |
| 08/05/2025 | Call received | | Call received from Relator | |
| 08/05/2025 | Supplemental Brief filed | | Supplemental Brief filed on behalf of Paul William Lonsford | PDF/2.35 MB |
| 07/28/2025 | Supplemental Brief filed | | Supplemental Brief filed on behalf of Paul William Lonsford | PDF/4.28 MB |
| 07/25/2025 | Call received | | Call received from Collin County District Court | |

*Lonsford v. Thompson, et al. — Verified Complaint Under 42 U.S.C. § 1983*

| Date | Event Type | Disposition | Remarks | Document |
|---|---|---|---|---|
| 07/25/2025 | Call received | | Call received from Collin County District Court | |
| 07/24/2025 | Supplemental Brief filed | | Supplemental Brief filed on behalf of Paul William Lonsford | PDF/813 KB |
| 07/22/2025 | Call received | | Call received from relator regarding status of motion to stay | |
| 07/22/2025 | Case forwarded to Court | | | |
| 07/20/2025 | Supplemental Brief filed | | Supplemental Brief filed on behalf of Paul William Lonsford | PDF/513 KB |
| 07/18/2025 | Document filed (see remarks) | | Document filed on behalf of Paul William Lonsford | PDF/387 KB |
| 07/17/2025 | Call received | | Call received from Relator | |
| 07/17/2025 | Call received | | Call received from relator regarding status of motion | |
| 07/17/2025 | Motion to Stay Filed | | Emergency Motion to Stay filed on behalf of Paul William Lonsford | PDF/354 KB |
| 07/17/2025 | Petition for Writ of Mandamus filed | | Petition for Writ of Mandamus filed on behalf of Paul William Lonsford | PDF/3.24 MB, Notice PDF/38 KB |

### *Calendars*

**Set Date   Calendar Type Reason Set Remarks**

10/10/2025 Case Stored       Case stored e-stored

### *Court of Appeals Information*

- **COA Case:** 05-25-00739-CV
- **Disposition:** Denied
- **Opinion Cite:** ___ SW3d ___, 07-17-25
- **COA District:** 5th Court of Appeals
- **COA Justice:** Honorable S. Craig Smith

**Trial Court Information:**

- **Court:** 416th District Court
- **County:** Collin
- **Court Judge:** Honorable Andrea Stroh Thompson
- **Court Case:** 416-52432-2012
-

## CERTIFICATION

I hereby certify that the foregoing exhibits are true and correct copies of the official docket histories obtained from the respective courts' public records systems on January 22, 2026.

Respectfully submitted,

_____

**Paul William Lonsford**
*Plaintiff,* Pro Se

820 Hawk Wood Lane
Prosper, Texas 75078
Tel: (214) 680-0990
Email: paul@lonsford.com

## XV. CERTIFICATE OF SERVICE

I hereby certify that on _____, 2026,

I caused a true and correct copy of this Verified Complaint, together with all exhibits, to be served

upon all Defendants in accordance with **Federal Rule of Civil Procedure 4,** as follows:

**Hon. Andrea Stroh Thompson**

416th District Court

2100 Bloomdale Road, Suite 20030

McKinney, Texas 75071

[Official capacity service via Texas Attorney General pursuant to **Tex. Civ. Prac. & Rem. Code § 17.044**]

**Steven Janway**

416th District Court

2100 Bloomdale Road, Suite 20030

McKinney, Texas 75071

**Kyle G. Basinger**

Goranson Bain Ausley, PLLC

8117 Preston Road, Suite 700

Dallas, Texas 75225

**Mona Hosseiny-Tovar**

Goranson Bain Ausley, PLLC

8117 Preston Road, Suite 700

Dallas, Texas 75225

**Nicole Gracey**

Goranson Bain Ausley, PLLC

8117 Preston Road, Suite 700

Dallas, Texas 75225

**Goranson Bain Ausley, PLLC**

c/o Registered Agent

8117 Preston Road, Suite 700

Dallas, Texas 75225

**Lacey Alexis Clement**

7712 Rocky Mountain Lane

McKinney, Texas 75070

**Collin County, Texas**

c/o Collin County Judge

2300 Bloomdale Road, Suite 4192

McKinney, Texas 75071

_____

**PAUL WILLIAM LONSFORD**

*Plaintiff, Pro Se*

820 Hawk Wood Lane

Prosper, Texas 75078

Telephone: (214) 250-9043

Email: paul@lonsford.com

Filed: _____, 2026

## XIV. VERIFICATION

### STATE OF TEXAS IN THE COUNTY OF COLLIN

I, **Paul William Lonsford,** declare under penalty of perjury under the laws of the United States of America that the factual statements contained in this **Verified Complaint** are true and correct to the best of my knowledge, information, and belief.

I further certify, pursuant to **Federal Rule of Civil Procedure 11(b),** that:

This filing is not presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

The claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

The factual contentions have evidentiary support or, if specifically, so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

The denials of factual contentions are warranted on the evidence or, if specifically, so identified, are reasonably based on belief or a lack of information.

**PAUL WILLIAM LONSFORD**

**Date:** 2/6/2026

*Lonsford v. Thompson, et al. — Verified Complaint Under 42 U.S.C. § 1983*

99

**SUBSCRIBED AND SWORN TO** before me on _2/6/2024_ , 2026.

_____

**Notary Public, State of Texas**

**My Commission Expires:** _10/18/2026_

JASON ROSE
Notary ID #134023144
My Commission Expires
October 18, 2026